456 S.E.2d 4

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Samuel E. ADAMS, Defendant Below, Appellant.**

**STATE of West Virginia ex rel. Samuel ADAMS, Petitioner,**

v.

**Delbert HARRISON, Sheriff of Putnam County, Respondent.**

**Nos. 22397, 22398.**

Supreme Court of Appeals of West Virginia.

Submitted Jan. 17, 1995.

Decided Feb. 17, 1995.

---

Rosemary J. Humway, Asst. Atty. Gen., Charleston, for appellee in No. 22398.

Daniel Corey, Poca, for appellant.

Samuel Adams, pro se.

Rosemary J. Humway, Asst. Atty. Gen., Charleston, for respondent in No. 22397.

CLECKLEY, Justice:

The appellant and defendant below, Samuel E. Adams, was convicted in June, 1993, by a jury in the Circuit Court of Putnam County of one count of concealing stolen property and one count of transferring stolen property.[1] On December 23, 1993, the defendant was sentenced to indeterminate consecutive terms of one to ten years on each count. On appeal, he argues that an amendment to count one of the indictment which changed the name of the owner of the stolen goods was unconstitutional. We disagree that the defendant's right under Section 4 of Article III of the West Virginia Constitution was violated, and we affirm his conviction on count one. Similarly, we find the defendant's remaining assignments of error to be without merit; and we affirm his conviction on count two.[2]

### I.

In the summer of 1992, the Putnam County Sheriff's Department investigated a series of breakings and enterings and grand larcenies. The police questioned Christopher Randolph and he admitted that he and Dwayne Smith were involved in approximately fifteen of those crimes. As part of their plea agreements, Mr. Randolph and Mr. Smith testified on behalf of the State at the defendant's trial.

The record reflects numerous incidents in which personal property was stolen by Mr. Randolph and Mr. Smith that they later sold to the defendant. On some occasions, the defendant sold the merchandise to Eddie Stratton, the owner of Deals on Wheels, a car lot in Putnam County. Specifically, the evidence regarding count one of the indictment shows Mr. Randolph and Mr. Smith broke into Ben's RV Center in Putnam County, a business owned by Jerry Cunningham, and stole a hand saw, a weedeater, and a lawn

---

[1.] A grand jury returned a six-count indictment charging the defendant with: (1) concealing stolen property, (2) transferring stolen property, (3) receiving stolen property, (4) third degree arson, (5) receiving stolen property, and (6) conspiracy to commit grand larceny. A severance was granted. Counts one and two were tried together and are the subject of this appeal.

[2.] An amended petition for appeal in Case No. 22397 was filed which incorporates with the present case the issues raised in the defendant's writ of habeas corpus *ad subjiciendum*.

mower. It was later learned that the items belonged to Edward Morgan, Mr. Cunningham's son-in-law. The men contacted the defendant to sell the merchandise. The defendant instructed the men to hide the items beside a cemetery on Poca River Road, and he led them to the area.

The evidence regarding count two of the indictment shows Mr. Randolph and Mr. Smith stole a lawn mower and a rototiller from the residence of Houston Thornton. They transported the items to a deserted field along Cow Creek Road in Putnam County. The defendant later purchased the goods from the men and stored the items at Deals on Wheels.

On count one, the grand jury returned an indictment which identified Jerry Cunningham as the owner of the stolen items. On May 28, 1993, the morning *voir dire* took place, the State moved to amend the indictment to identify Mr. Morgan as the owner of the goods. The circuit court allowed the amendment over the objection of defense counsel. On appeal, the defendant requests we reverse his conviction on both counts.

## II.

The defendant's first assignment of error is that his conviction on count one under the amended indictment was unconstitutional. It is well settled law that a defendant has a right under the Grand Jury Clause of Section 4 of Article III of the West Virginia Constitution to be tried only on felony offenses for which a grand jury has returned an indictment. In unbroken precedent, this Court has stated: " 'A valid indictment or presentment can be made only by a grand jury; and no court can make an indictment in the first instance or alter or amend

the substance of an indictment returned by a grand jury.' Syllabus Point 5, *State v. McGraw*, 140 W.Va. 547, 85 S.E.2d 849 (1955)." Syllabus Point 2, *State v. Pruitt*, 178 W.Va. 147, 358 S.E.2d 231 (1987). Similarly, the United States Supreme Court in *Ex parte Bain*, 121 U.S. 1, 10, 7 S.Ct. 781, 786, 30 L.Ed. 849, 852 (1887), states the reason for this rule:

> "If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says 'no person shall be held to answer,' may be frittered away until its value is almost destroyed." [3]

"This aspect of *Bain* has been reaffirmed in a number of subsequent cases. *See, e.g.,* *United States v. Norris*, 281 U.S. 619, 622, 50 S.Ct. 424[, 425], 74 L.Ed. 1076[, 1077] (1930) (citing *Bain* for the rule that 'nothing can be added to an indictment without the concurrence of the grand jury by which the bill was found')." *United States v. Miller*, 471 U.S. 130, 143, 105 S.Ct. 1811, 1818, 85 L.Ed.2d 99, 109 (1985).[4]

The State defends its pretrial amendment by suggesting: (1) there was no invasion of the defendant's constitutional right as a result of the amendment permitted by the circuit court; (2) the amendment did not change the nature of the offense; (3) the amendment merely corrected the victim's name; (4) the amendment related to a matter of form and not of substance; and (5) any error committed by the amendment was harmless only.

---

3. We recognize that the Grand Jury Clause of the Fifth Amendment to the United States Constitution is not applicable to the states and, therefore, only Section 4 of Article III of the West Virginia Constitution pertains to this inquiry. *See Hurtado v. People of the State of California*, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884). *But see Watson v. Jago*, 558 F.2d 330, 339 (6th Cir.1977) (while the grand jury provision of the Fifth Amendment does not apply to the states, "[t]o allow the prosecution to amend the indictment at trial so as to enable the prosecution to seek a conviction on a charge not brought by the grand jury unquestionably constitute[s] a denial of due process by not giving appellant fair notice of criminal charges to be brought against him").

4. *Bain* involved a substantive amendment to the indictment, but its decisional language is extremely broad. A close reading of most recent cases over the last twenty-five years reveals that the excessive strictness of some of the dicta in *Bain* regarding amendment to indictments has been moderated.

In *State v. McGraw, supra*, we addressed the very question raised by the defense.[5] We held that changing the name of the owner of stolen property "rendered the indictment invalid, and deprived that court of the power to try the accused on the indictment as amended." 140 W.Va. at 559, 85 S.E.2d at 857. Syllabus Point 4 of *McGraw* states:

"An amendment of an indictment which charges a separate and distinct offense from that charged in the indictment in its original form may not be made or permitted by a court; and such amendment, whether it relates to matters of form or matters of surplusage, invalidates the indictment and deprives the court of the power to proceed under the amended indictment."

Realizing that the holding in *McGraw* would be dispositive, the State essentially asks us to reconsider the wisdom of *McGraw* and to overrule it. We agree that *McGraw* must be reconsidered, and we believe it should be modified.[6] To the extent that *State v. McGraw* stands for the proposition that "any" change to an indictment, whether it be form or substance, requires resubmission to the grand jury for its approval, it is hereby expressly modified. Our decision today comports with those of the vast majority of other jurisdictions that have recently addressed this issue. The contemporary rule and the rule we adopt is that an indictment may be amended by the circuit court, provided the amendment is not substantial, is sufficiently definite and certain, does not take the defendant by surprise, and any evidence the defendant had before the amendment is equally available after the amendment.[7]

We start our analysis with the basic rule of law that any substantial amendment, direct, indirect or constructive, of an indictment must be resubmitted to the grand jury. An "amendment of form" which does not require resubmission of an indictment to the grand jury occurs when the defendant is not misled in any sense, is not subjected to any added burden of proof, and is not otherwise prejudiced.

The recent decision of the United States Supreme Court in *United States v. Miller, supra*, deals with variance between the charge and proof at trial, which is somewhat more problematic than a pretrial amendment of an indictment. *Miller* permits a "narrowing" of the charge, but not an alteration or enlargement. The latter, of course, would interfere with the notice, double jeopardy, and screening functions of a grand jury indictment. *See Russell v. United States*, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).[8] Where there is a pre-

5. The holding in *McGraw* was affirmed in *State v. Pruitt*, 178 W.Va. 147, 358 S.E.2d 231 (1987).

6. We find it unnecessary to overrule *McGraw* in its entirety. The actual holding of *McGraw* is very narrow and many of the points made in the text of that opinion are reaffirmed by our decision in this case. Under the particular facts of *McGraw*, this Court found the owner's identity was essential to a proper description and identification of the stolen property. In *McGraw*, we found this revision to be an amendment of substance. This part of *McGraw* is not affected by today's opinion. We continue the form/substance criterion as a relevant factor to be considered in determining whether a proposed amendment to an indictment has to be resubmitted to the grand jury. However, we include in the equation other factors such as whether the amendment results in prejudice to the defendant and whether the amendment charges a different crime.

7. The modified rule that we adopt applies to both felony and misdemeanor indictments. We agree with the court in *United States v. Goldstein*, 502 F.2d 526 (3rd Cir.1974), where it held that a

material variance between an indictment for a misdemeanor and proof was fatal to the conviction, even though the government could have proceeded by information. While an amendment to an information is generously permitted, having elected to proceed by indictment, the government was bound by the rules applicable to an indictment.

8. In reviewing the sufficiency of an indictment, we are guided by basic principles: (1) the indictment must contain a statement of essential facts constituting the offense charged; (2) it must contain allegations of each element of the offense charged, so that the defendant is given fair notice of the charge that he must defend against; and (3) the allegations must be sufficiently distinctive so that an acquittal or conviction on such charges can be pleaded to bar a second prosecution for the same offense. *See* W.Va.R.Crim.P. 7(c)(1); *Hamling v. United States*, 418 U.S. 87, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974); *State v. Knight*, 168 W.Va. 615, 285 S.E.2d 401 (1981). If an indictment contains multiple counts, each count is viewed as a separate indictment for purposes of determining its sufficiency. *See*

trial amendment to an indictment, as there was in this case, the notice and double jeopardy functions are not necessarily implicated, although the screening function of the grand jury may be—would the grand jury have indicted the defendant if the grand jurors knew that the stolen property actually belonged to Edward Morgan rather than James Cunningham, who was originally named as owner in the indictment? The answer to this question must be decided on a case-by-case basis. Considering the specific facts of this case, the answer seems to be "yes," but this might not always be the case where the identity of the victim is changed. For example, in a fight involving multiple parties, a defendant may have assaulted one person but not another; and it would seem plausible that the grand jury should evaluate the defendant's conduct with respect to the correct victim.

The holding in *McGraw* antedates Rule 7(e) of the West Virginia Rules of Criminal Procedure [9] and appears to follow the traditional form/substance distinction. In *McGraw*, this Court stated: "Though it was not necessary to name the owner of the stolen property the designation of the owner in the indictment in its original form and in the indictment as amended is in each instance a descriptive averment and constitutes a matter of substance which can not be considered or rejected as surplusage." 140 W.Va. at 556, 85 S.E.2d at 855.

Rule 7(e), although limited to amendments of an information, can be applied to indictments, as many courts have done.[10] This results in a prejudice/different offense approach. Prejudice largely means surprise, i.e., lack of adequate notice. In most cases, changing the name of the victim in the indictment prior to trial should not raise this problem. Even if it were done close to the trial date, a continuance could be granted where necessary. The second prong of the test under Rule 7(e) is whether the amendment states a different offense. Concededly, the different offense part of the standard is more troublesome because it contains a good deal of flexibility and, hence, discretion. Obviously, there is a new offense if a different statutory provision is offered. A new offense would also result if a new theory or commission was suggested or a different series of events was relied upon.[11] Beyond this, changes such as misnomers become largely inconsequential.

This Court believes changing the name of the victim in an indictment *prior to trial* generally falls in this latter category. In such a situation, the notice and double jeopardy functions of the grand jury are not undermined. As we have suggested, although the grand jury screening function could be potentially implicated, we do not find that to be the case *sub judice*. Duplication of function in the preliminary hearing and grand jury is already wasteful; requiring

*Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). In sum, an indictment must be the work of the grand jury. It must be sufficient to give a defendant notice of the charge, so that he can defend against it and plead an acquittal or conviction as a bar to a subsequent effort to prosecute him for the same offense.

**9.** Rule 7(e) states: *"Amendment of Information. The court may permit an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."*

**10.** Most jurisdictions treat the amendment of an indictment no differently than the amendment of an information. Either a Rule 7(e)–type standard is applied to both informations and indictments or a substance/form standard is applied to both. However, the federal courts and several

states draw a sharp distinction between amendments of indictments and amendments of informations and allow considerably less latitude for amendments to indictments. Indeed, some of these jurisdictions are commonly said to follow "the historic rule that an indictment may not be amended." None actually go so far as to adhere to the early common law prohibition that barred even amendments to cure misnomers, but they do follow what is sometimes described as the "rule of *Ex parte Bain*." *See* Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 19.5 at 824–29 (2nd ed. 1993).

**11.** *United States v. Miller, supra,* reaffirmed two traditional rules regarding indictments: "[N]ew allegations cannot be added to indictment except by the grand jury and a defendant cannot be convicted on the basis of evidence proving matters not alleged in the indictment." Charles H. Whitebread & Christopher Slobogin, *Criminal Procedure* § 23.06(d) at 572 (3rd ed. 1993).

the prosecution to go back to the grand jury for a new indictment alleging a different victim would just add more waste without being of any real benefit to the defendant except for the delay.[12] On the other hand, where the proposed change in the victim's identity really does change the events relied upon to constitute the charge, a new charge under the "different offense" language of Rule 7(e) occurs; and the prosecution must resubmit the case to the grand jury.[13] To preserve the integrity of the screening function of the grand jury in deciding whether a different offense results from the amendment, and in addition to those factors discussed above, it must be determined whether the amendment is one of "form" and not of "substance." The decision whether the change is merely as to form as opposed to a new offense is best left to the discretion of the circuit court. Thus, even though there is no indication of prejudice, an amendment that falls short of changing the basic offense can nonetheless be prohibited as an alteration of substance if it changes "the pleading description of the criminal act, the mens rea accompanying that act, or the consequences of that act." Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 19.5 at 827 (2nd. ed. 1993).

■ Thus, in the final analysis, the issue before this Court is whether the circuit court abused its discretion in failing to find that the amendment which changed the name of the owner of the stolen goods so altered the indictment as to charge a different offense from that found by the grand jury. For reasons discussed above, we hold that the circuit court did not abuse its discretion. Unless a defendant can demonstrate prejudice, a circuit court may amend an indictment in a manner that does not strike any substantive portion of the charging paragraph and does not change the offense charged. As to what is the substance of the charge, *United States v. Denny*, 165 F.2d 668, 669 (7th Cir.1947), *cert. denied*, 333 U.S. 844, 68 S.Ct. 662, 92 L.Ed. 1127 (1948), states: "Every fact which must be proved to make the act complained of a crime is [a] matter of substance, and ... all else is formal."[14]

In light of the foregoing, the proper disposition of this case is clear. What was changed in the indictment was not essential to the offense on which the jury convicted. Thus, we hold the amended indictment was valid and the defendant's right to be tried only on the offense for which a grand jury returned an indictment was not violated.

**12.** We believe it is important, in view of the increasing demands upon the State's treasury, that the expense of administering justice not be augmented unnecessarily by overly technical procedural rules that serve no useful purpose in criminal litigation. Similarly, requiring resubmission to the grand jury of all revisions to an indictment contributes to slowing up the already overburdened machinery of the prosecution. Thus, to require resubmission to the grand jury of the change proposed in this case would be not only a waste of money, but also a waste of time and energy. *National Commission on Law Observance and Enforcement (Wickersham Commission), Report on Prosecution* 34–37 (1931).

**13.** In *Pruitt, supra*, the defendant was charged with obtaining property in return for a worthless check in violation of W.Va.Code, 61–3–39 (1977). The original indictment charged "that Mr. Pruitt had written a check to Bandy's, Inc., in the amount of $1169.00, drawn on the Bank of Raleigh of Beckley, 'when he the said David Pruitt knowingly did not have sufficient funds on deposit in or credit with the Bank of Raleigh.' " This Court held that adding to the indictment the

words " 'and as agent for Cash Sales, Inc., a corporation, knew that he and said corporation did not have sufficient funds on deposit in or credit with the said Bank of Raleigh' " was an impermissible amendment of substance under *McGraw*. 178 W.Va. at 148, 358 S.E.2d at 232. It is obvious that the change to the indictment in *Pruitt* constituted a new description of the offense and definitely added to the defendant's burden of proof.

**14.** In this case it was unnecessary for the grand jury to return an indictment which alleged the name of the victim. W.Va.Code, 61–3–18 (1923), states:

"If any person buy or receive from another person, or aid in concealing, or transfer to a person other than the owner thereof, any stolen goods or other thing of value, which he knows or has reason to believe has been stolen, he shall be deemed guilty of the larceny thereof, and may be prosecuted although the principal offender be not convicted."

Accordingly, there is no significance whatsoever in who was the actual owner of the goods taken from Ben's RV Center.

### III.

In the second assignment of error, the defendant argues that count two of the indictment should have been dismissed because no evidence was presented to the grand jury that he transferred the stolen goods. The defendant raised this issue below. The circuit court reviewed the grand jury minutes and found that evidence was presented on count two.

■ "Generally speaking, the finding by the grand jury that the evidence is sufficient is not subject to judicial review." I Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure* Grand Jury and Indictments I–651 (2d ed. 1993). Cases are legion supporting the proposition that a defendant may not challenge a facially valid indictment returned by a legally constituted grand jury on the basis that the evidence presented to the grand jury was legally insufficient. *See United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Costello v. United States,* 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956).

■ This Court reviews indictments only for constitutional error and prosecutorial misconduct. Significantly, the defendant does not assert the grand jury was biased against him or motivated by impermissible factors. Neither is there an allegation of prosecutorial misconduct before the grand jury.

■ In *United States v. Mills,* 995 F.2d 480, 487 (4th Cir.), *cert. denied* ── U.S. ──, 114 S.Ct. 283, 126 L.Ed.2d 233 (1993), the Court of Appeals stated:

"The longstanding rule of law that courts may not 'look behind' grand jury indictments if 'returned by a legally constituted and unbiased grand jury ...' is the touchstone for any inquiry into the legality of indictments. *Costello v. United States,* 350 U.S. 359, 363, 76 S.Ct. 406, 408, 100 L.Ed. 397[, 402] (1956). The *Costello* Court was urged, but declined to hold, that defendants may 'challenge indictments on the ground that they are not supported by adequate or competent evidence.' *Id.,* 350

U.S. at 364, 76 S.Ct. at 409[, 100 L.Ed. at 402]."

Furthermore, when we consider the defendant was convicted on both counts, it is odd that he would now argue the sufficiency of the evidence before the grand jury. Having been held to the higher standard of guilt beyond a reasonable doubt before an impartial jury, the defendant "can hardly be heard to complain that he is the innocent victim of a grand jury gone mad." *Mills,* 995 F.2d at 489. Accordingly, we decline to disturb the circuit court's decision on this matter.

### IV.

■ The defendant's third assignment of error relates to a discussion that was overheard by an alternate juror. The alternate juror sent a note to the circuit judge requesting to speak to him. Upon receiving the note, the circuit judge called defense counsel, the defendant, and the prosecutor into chambers and the alternate juror informed them that, during a recess in the trial, she observed Detective Roger Blankenship, a deputy, and another man apparently discussing the testimony of Deputy William Gillespie. The alternate juror did not discuss what she overheard with the other jurors. She stated the event would not affect her judgment one way or the other.[15]

The defendant now contends the circuit court erred in disregarding a violation of its sequestration order and, as a result, the trial was rendered partial and unfair. The State responds that defense counsel was allowed to question the alternate juror to determine if any prejudice resulted from the conversation. Furthermore, the defendant declined to make a motion to prevent Detective Blankenship from testifying or to request a new trial.

After reviewing the matter, we find the defendant failed to preserve this ground for appellate review. " 'Our general rule is that nonjurisdictional trial error not raised in the trial court will not be addressed on appeal.' Syllabus Point 9, *State v. Humphrey,* 177 W.Va. 264, 351 S.E.2d 613 (1986)." Syllabus Point 4, *State v. Smith,* 178 W.Va. 104, 358 S.E.2d 188 (1987). Nevertheless, even if we

---

**15.** The alternate juror did not participate in jury deliberations.

consider this assignment of error, a review of the record does not demonstrate the ensuing testimony of Deputy Blankenship had an unfair prejudicial effect on the defendant's case. Furthermore, the defendant does not state with particularity how the violation of the sequestration order caused him prejudice or rendered his trial unfair. *See* Syl. pt. 4, *State v. Steele*, 178 W.Va. 330, 359 S.E.2d 558 (1987). Accordingly, we find the circuit court did not abuse its discretion in this matter.

## V.

■ In his remaining assignment of error, the defendant argues that Putnam County was the wrong venue in which to try this case because the crime charged in count one as to the concealment of stolen property occurred, if at all, at his residence in Kanawha County. This assignment of error is without merit. Rule 18 of the West Virginia Rules of Criminal Procedure states: "Except as otherwise permitted by statute or by these rules, the prosecution shall be had in a county in which the offense was committed."

The record reflects the crime charged in count one of the indictment did occur in Putnam County. Mr. Randolph and Mr. Smith stole the goods from Ben's RV Center, which is located in Putnam County. They met with the defendant who led them to a cemetery off Poca River Road in Putnam County to hide the goods. Therefore, the jury finding that the defendant concealed the stolen property in Putnam County is supported by the record.

## VI.

For the reasons set forth above, we affirm the defendant's conviction on both counts one and two of the indictment.

Affirmed.

BROTHERTON, Justice, did not participate.

FOX, Judge, sitting by temporary assignment.