IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2013 Term

No. 12-0777

**FILED**

**October 25, 2013**

**released at 3:00 p.m.**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

STATE of WEST VIRGINIA,
Plaintiff Below, Respondent

v.

KENNETH EUGENE CARTER,
Defendant Below, Petitioner

Appeal from the Circuit Court of Kanawha County
The Honorable James C. Stucky, Judge
Criminal Action No. 11–F–692

AFFIRMED

Submitted: October 16, 2013
Filed: October 25, 2013

Charles R. Hamilton, Esq.
Charleston, West Virginia
Counsel for the Petitioner

Patrick Morrisey, Esq.
Attorney General
Benjamin F. Yancey, Esq.
Assistant Attorney General
Counsel for the Respondent

The Opinion of the Court was delivered PER CURIAM.

**SYLLABUS BY THE COURT**

1.      "This Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*. However, in addition to the *de novo* standard, where the circuit court conducts an evidentiary hearing upon the motion, this Court's 'clearly erroneous' standard of review is invoked concerning the circuit court's findings of fact." Syllabus Point 1, *State v. Grimes*, 226 W.Va. 411, 701 S.E.2d 449 (2009).

2.      "Except for willful, intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to determine its legality or its sufficiency.  Syl., *Barker v. Fox*, 160 W.Va. 749, 238 S.E.2d 235 (1977)." Syllabus Point 3, *State v. Grimes*, 226 W.Va. 411, 701 S.E.2d 449 (2009).

3.      "The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt."  Syllabus Point 1,  *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995).

Per curiam:

The defendant, Kenneth Eugene Carter, appeals his conviction for murder of the first degree and malicious wounding. Having fully considered the record, the briefs and arguments of counsel, the defendant's convictions and sentences are affirmed.[1]

## I. *Factual Background*

The defendant was indicted by a grand jury for first degree murder and malicious wounding. The case was tried before a jury in May 2012 and the defendant was found guilty of murdering Ronald Ian Forton and maliciously wounding Bradie Dunlap.

The State introduced evidence at trial demonstrating that, on July 20, 2011, the defendant entered the bedroom of Mr. Forton and brutally beat him with a baseball bat, crushing his skull and causing his death. The defendant also used the baseball bat to beat Mr. Forton's 60-year-old domestic partner, Mr. Dunlap, about the head, rendering Mr. Dunlap unconscious. Mr. Dunlap survived the attack and testified at the defendant's trial.

---

[1]The defendant, although represented by counsel, submitted *pro se* filings to this Court.

Mr. Dunlap explained that he first met the defendant at a homeless shelter in 2010. In October or November of 2010, the defendant asked if he and his pregnant wife could temporarily live with Mr. Dunlap and Mr. Forton. They agreed and the defendant and his wife moved into their small apartment for approximately four months. Mr. Dunlap related that during those four months the defendant repeatedly accused him and Mr. Forton of having sex with his wife. Mr. Dunlap and Mr. Forton repeatedly said they were not having sex with the defendant's wife, and told him they were in their own relationship with each other.

Mr. Dunlap recalled that during one of these instances the defendant became so agitated that he chased Mr. Forton from the apartment, threatening to "knock him in the head" with a brick. On another occasion, Mr. Dunlap, Mr. Forton, the defendant, and the defendant's wife were watching a movie when the defendant (who had been drinking) suddenly said "I've had enough of this." The defendant went to his toolbox, took out a hammer, and returned to the living room where he raised it as if to hit Mr. Forton in the head. Mr. Dunlap testified that "he begged [the defendant] not to hit [Mr. Forton]," and said, "Please don't hit him; you'll kill him." The defendant hit Mr. Forton with his fist but, at Mr. Dunlap's pleading, did not hit him with the hammer. During this incident Mr. Dunlap asked the defendant's wife to call the police, who arrived a short time later and arrested the defendant.

In the early Spring of 2011, the defendant and his wife moved into their own apartment. A short time later they moved into another apartment, this time closer to Mr. Dunlap and Mr. Forton. The defendant got into an altercation with the landlord and was shortly thereafter evicted. The defendant again came to Mr. Dunlap and Mr. Forton, told them of the eviction and said that his wife (who had recently given birth), had been committed to a state mental health facility. The defendant asked to again temporarily live with Mr. Dunlap and Mr. Forton. Mr. Dunlap testified that Mr. Forton "didn't like the situation and wished I wouldn't let [the defendant] come back in, because he was liable to hurt him [Mr. Forton]."

On the evening of July 19, 2011, Mr. Dunlap, Mr. Forton and the defendant were drinking vodka, and all three men got drunk. Mr. Dunlap related that whenever the defendant "gets drunk on vodka, he gets mean." Shortly after midnight (July 20th) Mr. Forton went to bed, but Mr. Dunlap and the defendant continued drinking. The defendant became argumentative and began accusing Mr. Dunlap of having slept with his wife. After repeated denials, Mr. Dunlap said that in exasperation he finally said, "Hell yeah, I had sex with her." The defendant grabbed a baseball bat and walked by him. Mr. Dunlap asked the defendant what he was going to doing with the bat, at which time the defendant hit him in the head with the baseball bat twice. Mr. Dunlap said that the next thing knew it was "nine o'clock in the morning and [he was] bleeding all over the place."

Upon waking, Mr. Dunlap called 911. The defendant sat beside him on the couch and listened to the entire call. After making the call, the defendant ordered Mr. Dunlap to go into the bathroom and wipe the dried blood from his face; however, Mr. Dunlap refused saying that Mr. Forton would take care of him when he woke up. When the paramedics arrived Mr. Dunlap told them he "fell off the porch and busted [his] head open." When he was later asked why he told the paramedics that story, Mr. Dunlap explained that it was "[b]ecause [he] was scared that [the defendant] would hurt them with the baseball bat." However, as he was being loaded into the ambulance, Mr. Dunlap told the paramedics about the baseball bat and asked them to check on Mr. Forton. Mr. Dunlap explained that he had not fallen from the porch, but had instead been hit with the baseball bat by the defendant, and that he was "scared that [Mr. Forton] may be hurt real bad." He repeated this concern to a police officer at the Emergency Room. Hospital records introduced at the defendant's trial show that Mr. Dunlap suffered an "[o]pen right frontal skull fracture. Right [tibial] fracture. Right clavicle fracture."

Despite Mr. Dunlap's concern, it was two days before police went to his apartment. Upon entering, they discovered Mr. Forton's body. Police later went to the hospital where they informed Mr. Dunlap that Mr. Forton had "been[en] beat to death" and that he been "dead for about two days." Mr. Dunlap said that he was upset by the news and that he "wanted [the defendant] to pay for it." Mr. Dunlap thought that if he "lied a little bit" and told the police he had seen the defendant hit Mr. Forton, it would help the prosecution.

4

At trial Mr. Dunlap explained that he realized that his lie did not help, because he "didn't see it."

In addition to Mr. Dunlap, the State called an inmate who shared a cell with the defendant. This inmate testified that the defendant told him he had murder and malicious assault charges pending against him. The defendant said he committed the offenses and told the inmate that "he walked over to the bed where [Mr. Forton] was sleeping and 'put it to him.'" The inmate related that the defendant walked around the cell and demonstrated how he struck Mr. Forton with the bat. After killing Mr. Forton and beating Mr. Dunlap, the defendant said to himself "Fuck it," and then passed out. Asked why he did it, the defendant told the inmate that it was because of a "smart remark" made by Mr. Dunlap, and that he [the defendant] was "tired of hearing that shit." The defendant further told the inmate that "he should have cut [Mr. Dunlap's and Mr. Forton's] ears off, put them through a string, held them up, and hollered in them – 'See what you made me do? I told you not to mess with my old lady.'"

In rendering its guilty verdicts, the jury did not recommend mercy on the murder charge. The defendant was sentenced to life imprisonment without the possibility of parole for the murder count and was sentenced to a consecutive term of 2-10 years imprisonment for the malicious wounding count. The defendant now appeals.

5

## II. *Discussion*

### A. The Indictment

The defendant asserts that the trial court should have granted his pretrial motion to dismiss the indictment. The defendant maintains that the indictment returned against him was obtained on the basis of "perjured testimony." The defendant argues that there was not sufficient evidence for a grand jury to have returned an indictment against him without the "perjured testimony."

In Syllabus Point 1 of *State v. Grimes*, 226 W.Va. 411, 701 S.E.2d 449 (2009), we set forth our standard of review concerning a motion to dismiss an indictment:

> This Court's standard of review concerning a motion to dismiss an indictment is, generally, *de novo*. However, in addition to the *de novo* standard, where the circuit court conducts an evidentiary hearing upon the motion, this Court's "clearly erroneous" standard of review is invoked concerning the circuit court's findings of fact.

We are also mindful that

> The general rule is that the validity of an indictment is not affected by the character of the evidence introduced before the grand jury, and an indictment valid on its face is not subject to challenge by a motion to quash on the ground the grand jury considered inadequate or incompetent evidence in returning the indictment.

Syllabus Point 2, *State v. Slie*, 158 W.Va. 672, 213 S.E.2d 109 (1975). Further, that "[e]xcept for willful, intentional fraud the law of this State does not permit the court to go behind an indictment to inquire into the evidence considered by the grand jury, either to

determine its legality or its sufficiency. Syl., *Barker v. Fox*, 160 W.Va. 749, 238 S.E.2d 235 (1977)." Syllabus Point 3, *State v. Grimes*, 226 W.Va. 411, 701 S.E.2d 449 (2009). Applying these standards, we find no reversible error.

Testifying before the grand jury, Detective Andrew Foster related his investigative findings regarding Mr. Forton's homicide and the assault on Mr. Dunlap. As part of his testimony Detective Foster stated that Mr. Dunlap had given a statement in which he said that

> he recalled [the defendant] grabbing a baseball bat, a wooden baseball bat, that was located there in the apartment and going towards Mr. Forton and then striking him in the head with this baseball bat.
>
> This initial incident took place in the hallway of the apartment, and then Mr. Dunlap recalled it going back towards the bedroom, and that being the last time he saw Mr. Forton. . . . Mr. Dunlap stated that he tried to intervene, at which point he was also struck by the baseball bat [the defendant] had in his hands. He was struck in the head several times.

A review of the record shows that there is no doubt that Mr. Dunlap's statement to police – a statement Mr. Dunlap was to later reaffirm under oath during the defendant's preliminary hearing – was a fabrication. An excerpt of Mr. Dunlap's testimony given during a pretrial hearing makes that conclusion certain:

> **Defense Counsel**: What did you tell them at the preliminary [hearing] that you saw [the defendant] do?
>
> **Mr. Dunlap** No, I didn't see him do it.

7

**Defense Counsel:** . . . you lied at the preliminary and told them you did, didn't you?

**Mr. Dunlap**: Yeah, I told them that I did see him beat him, but I didn't. I just thought that would help the law a little, so to speak. I didn't know that I was lying. I mean it was just a little white lie.

**Defense Counsel:** A little white lie?

**Mr. Dunlap**: Well, it might get him life or something like that, but it was still a little white lie.[2]

Although Mr. Dunlap's admittedly false statement was presented to the grand jury, we find no reversible error on this issue. As a general proposition, this "Court reviews indictments only for constitutional error and prosecutorial misconduct." *State v. Adams*, 193 W.Va. 277, 456 S.E.2d 4 (1995). In *Adams* we also noted that it was a "longstanding rule of law that courts may not 'look behind' grand jury indictments if 'returned by a legally

---

[2]During cross-examination at the defendant's trial Mr. Dunlap reaffirmed that his statement had been a lie:

> **Defense Counsel**: . . . You took an oath to tell the truth and only the truth so help you God.
> **Mr. Dunlap**: Yeah.
> **Defense Counsel**: And you lied?
> **Mr. Dunlap**: I just lied that one little fib.
> **Defense Counsel**: And that was that you told them that you had seen Kenny hit Ron with the bat, didn't you?
> **Mr. Dunlap**: Yeah.
> **Defense Counsel**: And that wasn't true, was it?
> **Mr. Dunlap**: No.
> **Defense Counsel**: You didn't see Kenny go anywhere near Ron with a bat?
> **Mr. Dunlap**: No.

8

constituted and unbiased grand jury[.]'" *Id.*, 193 W.Va. at 284, 456 S.E.2d at 11. This includes challenges to "indictments on the ground that they are not supported by adequate or competent evidence." *Id.*

Aside from contending that the grand jury should not have been presented with Mr. Dunlap's statement, the defendant has neither asserted that the grand jury was biased against him, nor that the prosecutor engaged in misconduct by presenting Detective Foster as a witness. At the time of Detective Foster's grand jury testimony, Mr. Dunlap had not yet recanted his false statement. The defendant has presented no evidence to show that Detective Foster knew Mr. Dunlap's statement to be false at the time of his grand jury testimony.

The defendant argues that if Mr. Dunlap's grand jury testimony were excluded, there would not be sufficient evidence upon which the grand jury could have returned an indictment against him. It is a well-settled principle of our jurisprudence that "[g]enerally speaking, the finding by the grand jury that the evidence is sufficient is not subject to judicial review." Franklin D. Cleckley, *Handbook on West Virginia Criminal Procedure,* I–651 (2d ed.1993). *See also Adams*, 193 W.Va. at 284, 456 S.E.2d at 11("Cases are legion supporting the proposition that a defendant may not challenge a facially valid indictment returned by a legally constituted grand jury on the basis that the evidence presented to the grand jury was legally insufficient.")(Citations omitted.). While the defendant feels aggrieved that a false statement was made to his grand jury, a jury found him guilty of the offenses set forth in the

9

indictment even though that jury was made fully aware, through vigorous cross-examination by defense counsel, that Mr. Dunlap had initially lied. We find no error.

**B. Denial of Motion for Judgment of Acquittal**

The defendant argues that the trial court committed reversible error by denying his motion for judgment of acquittal. The basis of the defendant's argument is that the evidence was insufficient to sustain the charges being submitted to his jury. We find no merit in this assignment.

This "Court applies a *de novo* standard of review to the denial of a motion for judgment of acquittal based upon the sufficiency of the evidence." *State v. Minigh*, 224 W.Va. 112, 680 S.E.2d 127 (2009). In Syllabus Point 1 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), we held that

> [t]he function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

In *State v. LaRock*, 196 W.Va. 294, 303, 470 S.E.2d 613, 622 (1996), we explained this analysis:

A convicted defendant who presses a claim of evidentiary insufficiency faces an uphill climb. The defendant fails if the evidence presented, taken in the light most agreeable to the prosecution, is adequate to permit a rational jury to find the essential elements of the offense of conviction beyond a reasonable doubt. Phrased another way, as long as the aggregate evidence justifies a judgment of conviction, other hypotheses more congenial to a finding of innocence need not be ruled out. We reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

Reviewing the record before us, there is ample evidence "to permit a rational jury to find the essential elements of the offense of conviction." *Id.* The defendant admitted to a fellow inmate that he killed Mr. Forton. Mr. Dunlap testified that the defendant beat him with a baseball bat. The defendant argues that these two witnesses were not credible. However, the testimony of those two witnesses was enough for the trial court to deny the motion for judgment of acquittal and send the case to the jury. The veracity of the two witnesses is not an issue for this Court – it was one for the defendant's jury, and it was one that was answered by that jury.

## C. 404(b) Evidence.

The defendant asserts that, under Rule 404(b) of the *Rules of Evidence*, the trial court erred by permitting the State to introduce two prior acts of violence that he committed against Mr. Forton. The first of these acts was that the defendant had, on a prior occasion, threatened to strike Mr. Forton with a hammer, and that he did physically assault him with

11

his fist during that incident. The second prior act was that the defendant took a brick and raised it as if to hit Mr. Forton with it, at which time Mr. Forton fled from his apartment.

In addition to these two acts, the defendant asserts that error occurred during his testimony at the defendant's trial. During cross-examination the defendant was asked about the brick incident and his arrest following that incident. In an apparent effort to negate that his arrest was related to the brick incident, the defendant testified that he thought he had been arrested and jailed for violating a domestic violence protective order. The defendant contends that this testimony was error because the parties had agreed, in a pretrial stipulation, not to introduce any evidence of prior domestic abuse between the defendant and his wife.[3] The defendant's testimony at issue was not responsive to the question being asked by the prosecutor. We therefore find no merit in this argument.

In *State v. LaRock*, 196 W.Va. at 310–311, 470 S.E.2d at 629–630(footnote and citations omitted), we held that

> a trial court's admission of evidence pursuant to Rule 404(b) involves a three-step analysis. First, we review for clear error the trial court's factual determination that there is sufficient evidence to show the other acts occurred. Second, we review de novo whether the trial court correctly found the evidence was

---

[3]The State sought use of a third prior act, where the defendant was alleged to have choked Mr. Forton. However, following the Rule 404(b) hearing, the trial court concluded that it would not permit the evidence on the basis that its occurrence had not been established by a preponderance of the evidence.

> admissible for a legitimate purpose. Third, we review for an abuse of discretion the trial court's conclusion that the "other acts" evidence is more probative than prejudicial under Rule 403.

In *State v. Willett*, 223 W. Va. 394, 397, 674 S.E.2d 602, 605 (2009), we further explained that "[i]n reviewing the admission of Rule 404(b) evidence, we review it in the light most favorable to the party offering the evidence ... maximizing its probative value and minimizing its prejudicial effect." Applying these standards, we find no merit in the defendant's arguments.

There is more than sufficient evidence in the record to support the trial court's conclusion that the prior acts had occurred. Mr. Dunlap testified about both incidents. In the brick incident, Mr. Dunlap testified that the defendant grabbed a brick that was being used to keep a door open, said to Mr. Forton that he was "going to bash [him] in the head with [it]" and chased Mr. Forton from the apartment. In the hammer incident, Mr. Dunlap testified that the defendant had hit Mr. Forton in the jaw with his fist, and that he raised the hammer up as if he were going to hit Mr. Forton in the head, at which time Mr. Dunlap said that he told the defendant, "Don't do it Kenny, don't, for God's sake you'll kill him." In response to the plea, the defendant said, "I don't give a f*** about that." Police arrived a short time later and the defendant was arrested.

13

We also find that the trial court properly concluded that there was a legitimate purpose for admission of the Rule 404(b) evidence. The trial court limited the use of the evidence to the issue of intent, and instructed the jury on that limited use. The State's theory of the case was that the defendant acted violently whenever he got it in his mind that Mr. Forton or Mr. Dunlap was sleeping with his wife. During both of the referenced incidents, the defendant was accusing Mr. Forton and Mr. Dunlap of "screwing his wife." On the evening of Mr. Forton's murder, the defendant was again accusing the men of having sex with his wife.

Finally, we conclude that the trial court properly determined that the evidence at issue was more probative than prejudicial. The trial court carefully instructed the jury as to the weight to be afforded the evidence. The trial court told the jury that the defendant was not on trial for those prior offenses and that this evidence was only relevant to the element of intent.

We find no merit in the defendant's 404(b) arguments.

### III.  *Conclusion*

14

For the foregoing reasons, the defendant's convictions and sentences are affirmed.[4]

Affirmed.

---

[4]The defendant raises several other issues as assignments of error: (1) that the prosecutor made improper statements during his trial; (2) that the trial court erred in ruling that the prosecutor did not have a conflict of interest because he was also prosecuting "the jailhouse snitch" who testified against the defendant; (3) that the trial court erred by not dismissing the jury venire during *voir dire* for "contamination;"(4) that the trial court erred by denying the defendant's "motion to interrogate the jury foreman;" and (5) that the trial court erred by denying the motion for a new trial on the basis that it was discovered during trial that 20 swabs of DNA had not been tested.

A careful review of the record reveals that there is no merit in these five assignments of error.