FILED

**October 11, 2018**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Workman v. Carmichael, No. 18-0816

Bloom, J. and Reger, J., concurring in part and dissenting in part:

In this proceeding the Court was called upon to decide whether three Articles of Impeachment against the Petitioner, Article IV, Article VI, and Article XIV, were constitutionally valid. The majority opinion concluded that all three Articles of Impeachment were constitutionally invalid and therefore prohibited the Respondents from prosecuting the Petitioner on those charges. We concur in the resolution of those three Articles of Impeachment. Even though the dispositive issues in this case were resolved when it was determined that all three Articles of Impeachment were invalid, the majority opinion chose to address another issue that was not necessary for the resolution of the case. For the reasons set out below, we dissent from the majority decision to address that issue.[1]

**Prefatory Remarks**

Before we address the substantive issues of our concurring opinion, we feel that it is imperative that we make clear that it is our belief that the Legislature has absolute authority to impeach a judicial officer or any State public officer for wrongful conduct.

---

[1] It will also  be noted that we believe the Court should have exercised its authority and set the case for oral argument, even though the Respondents waived oral argument. Many of the issues presented are related to transparency.  Not having oral argument eliminates the opportunity for a more thoughtful discussion with the parties and perhaps greater illumination of the issues for the Court. Also in a case both constitutionally and politically charged, transparency better serves the parties, the court and the public interest.

1

Through the State Constitution the people of West Virginia provided that "[t]he legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others...." W.Va. Const. Art. 5, § 1. It has been observed that "[t]he doctrine of separation of powers 'is at the heart of our Constitution.'" *Consumer Energy Council of Am. v. Fed. Energy Regulatory Comm'n*, 673 F.2d 425, 471 (D.C. Cir. 1982). The objective of that doctrine has been eloquently and concisely stated as follows:

> The doctrine of the separation of powers was adopted … not to promote efficiency but to preclude the exercise of arbitrary power. The purpose was, not to avoid friction, but, by means of the inevitable friction incident to the distribution of governmental powers among three departments, to save the people from autocracy.

*Myers v. United States*, 272 U.S. 52, 293, 47 S.Ct. 21, 84, 71 L.Ed. 160 (1926) (Brandeis, J., dissenting).

The State Constitution, Article IV, § 9, invests absolute authority in the Legislature to bring impeachment charges against a public officer and to prosecute those charges. Pursuant to Article IV, § 9 "[t]he House of Delegates has the sole power of impeachment, and the Senate the sole power to try impeachments." *Slack v. Jacob*, 1875 W.L. 3439, 8 W. Va. 612, 664 (1875). Courts around the country have long recognized that the Legislature has "exclusive jurisdiction in impeachment matters or matters pertaining to impeachment of impeachable officers[.]" *State v. Chambers*, 220 P. 890, 892 (Okla. 1923). Of course "that authority is not unbounded and legislative

2

encroachment upon other constitutional principles may, in an appropriate case, be subject to judicial review." *Office of Governor v. Select Comm. of Inquiry*, 271 Conn. 540, 574, 858 A.2d 709, 730 (2004). Even so, judicial intervention in an impeachment proceeding should be extremely rare, and only in the limited situation where an impeachment charge is prohibited by the Constitution.

Courts have observed that the "political question doctrine" is part of the separation of powers doctrine. "[T]he political question doctrine is essentially a function of the separation of powers, ... existing to restrain courts from inappropriate interference in the business of the other branches of Government, ... and deriving in large part from prudential concerns about the respect we owe the political departments." *Nixon v. United States*, 506 U.S. 224, 252-253, 113 S.Ct. 732, 122 L.Ed.2d 1 (1993) (Souter, J., concurring) (internal quotation marks and citations omitted). The United States Supreme Court has summarized the political question doctrine as follows:

> Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political

3

decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question. *Baker v. Carr*, 369 U.S. 186, 217, 82 S. Ct. 691, 710, 7 L. Ed. 2d 663 (1962). In the final analysis, "if the text of the constitution has demonstrably committed the disposition of a particular matter to a coordinate branch of government, a court should decline to adjudicate the issue to avoid encroaching upon the powers and functions of that branch." *Horton v. McLaughlin*, 149 N.H. 141, 143, 821 A.2d 947, 949 (2003). See *Smith v. Reagan*, 637 F. Supp. 964, 968 (E.D.N.C. 1986), rev'd on other grounds, 844 F.2d 195 (4th Cir. 1988) ("The courts have often recognized that this doctrine calls for the exercise of judicial restraint when the issues involve the resolution of questions committed by the text of the Constitution to a coordinate branch of government.").

As we demonstrate below, the political question doctrine precluded the majority from addressing two procedural flaws in the impeachment proceeding.

**1.**

**Resolution of the Procedural Flaws in the Impeachment**

**Proceeding Should have been Resolved by the Court of Impeachment**

The majority opinion correctly determined that the judiciary has a limited role in impeachment proceedings, that extend to protecting the constitutional rights of an impeached official. However, the majority opinion went beyond that limited role. Specifically, the majority opinion determined that it had authority to decide that two alleged procedural errors invalidated the entire impeachment proceedings. Those alleged

4

errors involved the House of Delegates failure to include findings of fact in the Articles of Impeachment, and in failing to pass a resolution adopting the Articles of Impeachment.

The United States Supreme Court has observed, and we agree, that there should not be "judicial review to the procedures used by the [Legislature] in trying impeachments[.]" *Nixon v. United States*, 506 U.S. 224, 236, 113 S. Ct. 732, 739, 122 L. Ed. 2d 1 (1993). It is the exclusive province of the Legislature to determine what, if any, consequences should follow from its failure to adhere to an impeachment procedure. In this case, as we mentioned, the House of Delegates are alleged to have failed to make findings of facts and to adopt a resolution of impeachment. The impact of both of those alleged errors on the impeachment proceedings was a matter for the House of Delegates to resolve and, in the absence of the matter being resolved by the House, it should have been presented to the Court of Impeachment for the Senate to resolve. See *Hastings v. United States*, 837 F. Supp. 3, 5 (D.D.C. 1993) ("Thus, the Senate's procedures for trying an impeached individual cannot be subject to review by the judiciary."); *Alabama House of Representatives Judiciary Comm. v. Office of the Governor of Alabama*, 213 So. 3d 579 (Ala. 2017) ("[T]he method of impeachment of the governor rests in the legislature, courts are required to refrain from exercising judicial power over this matter. The exercise of such power would infringe upon the exercise of clearly defined legislative power."); *Mecham v. Gordon*, 156 Ariz. 297, 303, 751 P.2d 957, 963 (1988) ("[T]he Constitution gives the Senate, rather than this Court, the power to determine what rules and procedures should be followed in the impeachment trial."). Ultimately, the House or the Senate could have determined that the alleged errors were harmless and did not affect

5

the substantial rights of the Petitioner. See *State v. Swims*, 212 W.Va. 263, 270, 569 S.E.2d 784, 791 (2002) ("Error is harmless when it is trivial, formal, or merely academic, and not prejudicial to the substantial rights of the party assigning it, and where it in no way affects the outcome of the trial."); Syl. pt. 14, *State v. Salmons*, 203 W.Va. 561, 509 S.E.2d 842 (1998) ("Failure to observe a constitutional right constitutes reversible error unless it can be shown that the error was harmless beyond a reasonable doubt.").

Even if we agreed that the procedural issues were properly before this Court, the longstanding practice of this Court is not to address an issue that is not necessary in order to grant the litigant the relief he or she seeks. See *State ex rel. Am. Elec. Power Co. v. Swope*, 239 W. Va. 470, 476 n.9, 801 S.E.2d 485, 491 n.9 (2017) ("Because this case can be resolved on the first issue presented, the applicability of the public policy exception, we need not address the remaining issues presented by Petitioners."); *Littell v. Mullins*, No. 15-0364, 2016 WL 1735234, at *5 n.6 (W. Va. 2016) ("Because our resolution of the first issue raised by Mr. Littell is dispositive of the case sub judice, we need not address his remaining assignments of error[.]"); *State v. Stewart*, 228 W. Va. 406, 419 n.13, 719 S.E.2d 876, 889 n.13 (2011) ("Because we have found the issues discussed dispositive, we need not address the defendant's remaining assignments of error."); *Gibson v. McBride*, 222 W. Va. 194, 199 n.17, 663 S.E.2d 648, 653 n.17 (2008) ("Because we affirm the granting of the writ on the issue of prison garb and shackles, we need not address the remaining issues[.]"); State ex rel. Pritt v. Vickers, 214 W. Va. 221, 227 n.21, 588 S.E.2d 210, 216 n.21 (2003) ("Because of our resolution of the scheduling order motion, we need not address the remaining issues presented by Ms. Pritt."); *Am. Tower*

6

*Corp. v. Common Council of City of Beckley*, 210 W. Va. 345, 350 n.14, 557 S.E.2d 752, 757 n.14 (2001) ("As a result of our resolution of this issue, we need not address further the Council's remaining assignments of error."). It is clear that when the majority opinion resolved the substantive issues in Article IV, Article VI, and Article XIV, the Petitioner had obtained the relief she sought. Thus, there was no need to address the remaining issues raised.

By addressing the non-dispositive procedural issues, the majority decision is rendering an advisory opinion on those issues. It is a fundamental principle that "this Court is not authorized to issue advisory opinions[.]" *State ex rel. City of Charleston v. Coghill*, 156 W.Va. 877, 891, 207 S.E.2d 113, 122 (1973) (Haden, J., dissenting). The Court has observed that "[s]ince President Washington, in 1793, sought and was refused legal advice from the Justices of the United States Supreme Court, courts—state and federal—have continuously maintained that they will not give 'advisory opinions.'" *Harshbarger v. Gainer*, 184 W.Va. 656, 659, 403 S.E.2d 399, 402 (1991). See *Mainella v. Bd. of Trustees of Policemen's Pension or Relief Fund of City of Fairmont*, 126 W. Va. 183, 185, 27 S.E.2d 486, 487-488 (1943) ("Courts are not constituted for the purpose of making advisory decrees or resolving academic disputes."). Specifically, this Court has expressly held "that the writ of prohibition cannot be invoked[ ] to secure from th[is] Court ... an advisory opinion [.]" *F.S.T., Inc. v. Hancock Cty. Comm'n*, No. 17-0016, 2017 WL 4711427, at *3 (W. Va. 2017) (internal quotation marks and citation omitted). More importantly, the advisory opinion on the two issues has a lethal consequence--it has invalidated the impeachment trials of the two remaining judicial officers.

7

**2.**

**The Legislature May Seek to Impeach the Petitioner again Based upon**

**Some of the Allegations in Article XIV of the Articles of Impeachment**

It is clear that the Legislature cannot seek to impeach the Petitioner once again on the charges set out in Article IV and Article VI. However, we believe the Legislature has the right to seek to institute new impeachment proceedings to craft a constitutionally acceptable impeachment charge based upon the allegations set out in Article XIV.

It has been recognized that "[i]mpeachment is in the nature of an indictment by a grand jury." *State v. Leese*, 55 N.W. 798, 799 (Neb. 1893). See *Brumbaugh v. Rehnquist*, 2001 WL 376477, at *1 (N.D. Tex. Apr. 13, 2001) ("This process produces articles of impeachment resembling an indictment which trigger the 'sole Power' of the Senate to 'try all Impeachments.'"); *Ferguson v. Wilcox*, 119 Tex. 280, 297, 28 S.W.2d 526, 534 (Tex. 1930) ("The House of Representatives first acts in the capacity of a grand jury, and it must, in effect, return the indictment, to wit, the articles of impeachment."); *State v. Buckley*, 54 Ala. 599, 618 (1875) (recognizing "articles of impeachment are a kind of bill of indictment."). The law in this State is clear in holding that a defective indictment may be amended by a court in limited circumstances, and may be resubmitted to a grand jury to correct a defect. This principle of law was set out in syllabus point 3 of *State v. Adams*, 193 W.Va. 277, 456 S.E.2d 4 (1995) as follows:

Any substantial amendment, direct or indirect, of an indictment must be resubmitted to the grand jury. An "amendment of form" which does not require resubmission of an indictment to the grand jury occurs when the

8

defendant is not misled in any sense, is not subjected to any added burden of proof, and is not otherwise prejudiced.

Consistent with *Adams*, we believe that the Legislature has absolute discretion in seeking to re-impeach the Petitioner on the allegations contained in Article XIV.

In view of the foregoing, we concur in part and dissent in part.