**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

**January 2016 Term**

_____

**No. 14-1310**

_____

**FILED**

**March 8, 2016**

**released at 3:00 p.m.**
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA,**
**Plaintiff Below, Respondent**

**v.**

**FRANK S.,**
**Defendant Below, Petitioner.**

_____

**Appeal from the Circuit Court of Monongalia County**
**The Honorable Phillip D. Gaujot, Judge**
**Criminal Action No. 14-F-215**

**AFFIRMED**

_____

**Submitted: February 24, 2016**
**Filed: March 8, 2016**

**J. Tyler Slavey, Esq.**
**Brewer & Giggenbach, PLLC**
**Morgantown, West Virginia**
**Counsel for the Petitioner**

**Patrick Morrisey, Esq.**
**Attorney General**
**Shannon Frederick Kiser, Esq.**
**Assistant Attorney General**
**Charleston, West Virginia**
**Counsel for the Respondent**

**CHIEF JUSTICE KETCHUM delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.    "A defendant is not entitled to relief from prejudicial joinder pursuant to Rule 14 of the West Virginia Rules of Criminal Procedure when evidence of each of the crimes charged would be admissible in a separate trial for the other."  Syl. Pt. 2, *State v. Milburn*, 204 W.Va. 203, 522 S.E.2d 828 (1998).

2.    "Any substantial amendment, direct or indirect, of an indictment must be resubmitted to the grand jury. An 'amendment of form' which does not require resubmission of an indictment to the grand jury occurs when the defendant is not misled in any sense, is not subjected to any added burden of proof, and is not otherwise prejudiced."  Syl. Pt. 3, *State v. Adams*, 193 W.Va. 277, 456 S.E.2d 4 (1995).

3.    "The judge and jury share responsibility for the ultimate determination of territorial jurisdiction in a criminal case involving controverted jurisdictional facts.  The court must first determine as a matter of law whether the elemental act or consequence at the heart of the disputed evidence would be sufficient to establish jurisdiction if it occurred within the State.  If sufficiency is found by the court, the matter is submitted to the jury for determination of whether the evidence demonstrates beyond a reasonable doubt that the act or consequence at issue actually occurred within the borders of the State."  Syl. Pt. 4, *State v. Dennis*, 216 W.Va. 331, 607 S.E.2d 437 (2004).

i

**Chief Justice Ketchum:**

The Petitioner and Defendant below, Frank S., appeals the September 19, 2014, jury verdict of the Circuit Court of Monongalia County finding him guilty of nine counts of rape, three counts of incest, and eight counts of sodomy.[1] These twenty charges pertained to four girls, his two daughters and two step-daughters. In November of 2014, the circuit court sentenced him on each of the charges.

Petitioner asserts the circuit court erred in four ways: (1) denying his pre-trial motion to sever the charges against him; (2) allowing the State to amend the indictment as to the years in which his alleged conduct occurred; (3) sentencing him on charges he believes could not have occurred in West Virginia; and (4) denying his motion for acquittal based on insufficient evidence.

Upon review, we find no reversible error. The circuit court acted within its discretion when it denied Petitioner's motion to sever the charges against him and allowed the State to amend the indictment. Furthermore, there was sufficient evidence to support the jury's finding that, beyond a reasonable doubt, Petitioner committed all the alleged acts in West Virginia. Finally, sufficient evidence supported Petitioner's September 19, 2014, jury conviction. For these reasons, we affirm.

---

[1] Because the victims are related to Petitioner, we refer to him by his last name initial. *State v. Edward Charles L.*, 183 W.Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is accused of sexually abusing his two daughters (L.S. and S.S.) and his two step-daughters (L.W. and R.W.) while they were children.[2] L.S., S.S., L.W., and R.W. are now adults. Even though they live in different states and have not kept contact with each other since they were children, they all provided similar testimony at Petitioner's trial. Petitioner's two ex-wives, the mother of L.S. and S.S. and the mother of L.W. and R.W., corroborated their testimony at trial.[3]

Although the exact date is unclear, in 1968 or 1969, Petitioner and his family moved from Virginia to Morgantown, West Virginia. By then, he had divorced L.S. and S.S.'s mother and was married to L.W. and R.W.'s mother. L.S., L.W., and R.W. lived with Petitioner in Morgantown. For most of the relevant time period, S.S. lived in Florida with her mother.

---

[2] L.S., S.S., L.W., and R.W. testified the sexual abuse occurred between 1965 and 1975. Consistent with our practice in sensitive cases, we refer to the victims by their initials. In December 2012, after staying silent for forty to fifty years, L.S. contacted the Monongalia County Sheriff's Department to report Petitioner's sexual abuse of her and her sisters. The Sheriff's Department arrested Petitioner the following month, January 2013, and a grand jury indicted him in May 2013. After May 2013, both the State and Petitioner moved for continuances, and Petitioner stood trial in September 2014. Petitioner does not argue his constitutional rights were violated by the forty to fifty year time-gap between his alleged actions and the charges filed against him. Furthermore, West Virginia does not have a statute of limitations for Petitioner's purported crimes.

[3] The State also produced testimony from L.S.'s psychotherapist and her best friend. Both of these witnesses testified L.S. told them about the sexual abuse long before Petitioner's arrest.

L.S., L.W., and R.W. (the girls who lived with Petitioner in Morgantown) provided virtually the same testimony about how Petitioner sexually abused them. They testified the sexual abuse started when they were six or seven and continued until their early teen years. They claimed Petitioner would single out one of the girls and then tell the others to go play outside or accompany their mother on errands. When he had his victim alone, he would force her to have oral or vaginal intercourse with him, using Vaseline or saliva as lubricant. This sexual abuse usually took place in Petitioner's bedroom or in one of the bathrooms. Thereafter, Petitioner would instruct his victim to use mouthwash and/or a douche and threaten them not to tell anyone what happened.

S.S. testified she stayed with the family for a brief time in Morgantown but soon moved to Florida to be with her mother. She claims Petitioner raped her about five or six times in a manner consistent with that described by L.S., L.W., and R.W. Specifically, she testified Petitioner would get her alone, vaginally and orally rape her, and then make her use mouthwash afterwards. Finally, S.S. stated that when she returned from Morgantown, she told her mother what Petitioner did to her. S.S.'s mother did not report these allegations to the police.

S.S.'s mother confirmed she was told about the sexual abuse upon S.S.'s return from Morgantown. However, she did not explain why she did not alert the police even though L.S., her other daughter, still lived in Petitioner's house. Likewise, Petitioner's second wife (the mother of L.W. and R.W.) testified she also knew Petitioner was having sex with the children. Specifically, she testified she noticed several missing condoms and suspicious stains in the girls' underwear. She also stated she would

3

sometimes see L.S.'s red hair in Petitioner's bed. According to L.S. and R.W., Petitioner's second wife confronted them about whether they were sleeping with Petitioner. However, Petitioner's second wife did not explain why she failed to report her suspicions to the police.

At trial, Petitioner was charged by a twenty-count indictment, which included nine counts of rape, three counts of incest, and eight counts of sodomy. Counts one through nine pertained to L.S., Counts ten and eleven pertained to S.S., Counts twelve through seventeen pertained to L.W., and Counts eighteen through twenty pertained to R.W. Petitioner denied all the accusations against him and theorized that his accusers might be motivated by the sale of his house and the proceeds therefrom. On September 19, 2014, the jury found him guilty on all charges. Accordingly, the circuit court sentenced him on all charges in November 2014. He now appeals his conviction to this Court.

## II.
## STANDARD OF REVIEW

Petitioner raises four assignments of error involving differing standards of review. Accordingly, we discuss each applicable standard of review within our analysis regarding the assigned error.

# III.
# ANALYSIS

In Petitioner's four assignments of error, he challenges the circuit court's refusal to sever the charges against him; the amendment of the indictment as to when his alleged conduct occurred; the circuit court's territorial jurisdiction over certain charges; and the sufficiency of the evidence against him. For reasons explained in full below, we conclude the circuit court did not commit any reversible error.

## A. *Severance under West Virginia Rule of Criminal Procedure 14(a)*

Before trial, Petitioner moved to sever the charges against him into four separate trials – one for each victim. At a hearing on Petitioner's motion, he argued that without severance, the jury would improperly infer he was guilty based on the fact that four victims testified against him. The State responded that if Petitioner's motion was granted, the crimes against L.S., S.S., L.W., and R.W. would be admissible in each separate trial. Thus, severing the charges would result in four identical trials. The circuit court agreed with the State and denied Petitioner's motion to sever the charges.

Petitioner argues that even though the charges against him are "of the same or similar character," severance is required in this case. We have held that:

> Even where joinder or consolidation of offenses is proper under the West Virginia Rules of Criminal Procedure, the trial court *may* order separate trials pursuant to Rule 14(a) on the ground that such joinder or consolidation is prejudicial. *The decision to grant a motion for severance pursuant to W.Va. R. Crim. P. 14(a) is a matter within the sound discretion of the trial court.*

5

Syl. Pt. 3, *State v. Hatfield*, 181 W.Va. 106, 380 S.E.2d 670 (1988) (emphasis added). *See also* Syl. Pt. 6, in part, *State v. Mitter*, 168 W.Va. 531, 285 S.E.2d 376 (1981) ("[T]he question of whether to grant a motion for severance rests in the sound discretion of the trial court.").

Still, Petitioner asserts the circuit court did not have discretion to deny his motion to sever because joinder was prejudicial. As the defendant, he has the burden of demonstrating this prejudice was "compelling," "specific," and "substantial." 1A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE: CRIMINAL, § 222 (4th ed. 2015) (footnote omitted); *State v. Rash*, 226 W.Va. 35, 46, 697 S.E.2d 71, 82 (2010). Petitioner claims that joining these charges against him might have led the jury to cumulate the evidence against him and convict him because he is a "bad man," rather than on the particular charges.

As to this type of prejudice, it is widely recognized that:

> Courts have acknowledged the risk that multiple charges in a single trial may lead a jury to infer a criminal disposition and cumulate evidence against the accused, but rarely find the risk sufficient to require severance. *The mere claim that the jury will infer a criminal disposition and thus make it more difficult for the accused to make his case is not enough*[.]

WRIGHT, *Supra*, § 222 (footnote omitted). Similarly, in rejecting a defendant's claim that severance was required because the jury might cumulate the evidence and assume the defendant to be a bad person, this Court has stated: "Generally, this type of alleged prejudice is rarely sufficient to grant relief against joinder [under West Virginia Rule of

6

Criminal Procedure 14(a)]." *State v. Milburn*, 204 W.Va. 203, 209, 511 S.E.2d 828, 834 (1998).

Petitioner claims that, had he been permitted to defend against L.S., S.S., L.W., and R.W. separately, "he would have been acquitted of all charges." However, this unexplained assertion, by itself, is not sufficient to overcome the circuit court's discretion on whether to grant severance under West Virginia Rule of Criminal Procedure 14(a). "A claim that the defendant would have a better chance of acquittal if the counts were tried separately is routinely rejected as a ground for separate proceedings." WRIGHT, *Supra*, § 222 (footnote omitted).

Furthermore, "A defendant is not entitled to relief from prejudicial joinder pursuant to Rule 14 of the West Virginia Rules of Criminal Procedure when evidence of each of the crimes charged would be admissible in a separate trial for the other." Syl. Pt. 2, *State v. Milburn*, 204 W.Va. at 209, 522 S.E.2d at 834. Indeed, "if the evidence of each of the crimes on trial would be admissible in a separate trial for the other, prejudice to the accused would in no way be enlarged by the fact of joinder." 1 FRANKLIN D. CLECKLEY, HANDBOOK ON WEST VIRGINIA RULES OF CRIMINAL PROCEDURE, at 708 (2d ed. 1993). We abide by this rule because the purpose of joinder is "promotion of judicial economy by avoidance of needless multiple trials." *Hatfield*, 181 W.Va. at 110, 380 S.E.2d at 674.

Had the circuit court granted Petitioner separate trials for the offenses against L.S., S.S., L.W., and R.W., evidence as to any one of the victims would have been admissible in each of the four trials – resulting in four nearly identical and needless

7

trials. Here, Petitioner is accused of sexually abusing the four victims when they were

children. As we have held:

> Collateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition towards children generally, or a lustful disposition to specific other children provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment.

Syl. Pt. 2, in part, *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

In a similar case, *State v. Rash*, 226 W.Va. at 46, 697 S.E.2d at 82, we

rejected a defendant's assertion that he was entitled to sever charges of sexual abuse as to

two children under West Virginia Rule of Criminal Procedure 14(a). Importantly, we

stated: "The circuit court noted many striking similarities between the two offenses,

including the physical characteristics of the victims, their age at the time of the offenses,

and the fact that the Appellant's girlfriend was absent . . . when the alleged abuse

occurred." *Id. See also State v. Harris*, 226 W.Va. 471, 478, 702 S.E.2d 603, 610 (2010)

(Defendant was not entitled to severance of sexual abuse charges as to multiple victims

because even if the charges were severed, it was likely that the evidence relating to each

of the sexual offenses would be admissible in a separate trial for the other.).

The charges against Petitioner pertaining to the victims are strikingly

similar. These victims are sisters and step-sisters, each of whom testified they were

abused multiple times beginning at or around the age of six, while living or staying with

Petitioner from 1965 to 1975. The victims were abused in a like manner, in the same

location of the home in Morgantown, and were threatened not to reveal the abuse. They

8

testified the abuse usually occurred when Petitioner sent his wife on errands and ordered her to take along all the children except for one and that the one left behind would be the one abused in the otherwise empty house. The facts pertaining to each of the victims is even further intertwined by the fact L.S. claims to have witnessed Petitioner raping one of the other victims. Thus, evidence pertaining to any of these four victims would have been admissible in a separate trial as to the other three victims.

Before disposing of this ground for appeal, we note Petitioner's argument that the circuit court, in determining whether to grant severance under West Virginia Rule of Criminal Procedure 14(a), was required to conduct a hearing in accordance with *State v. McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994).[4] *McGinnis* is limited to offers of evidence under West Virginia Rule of Evidence 404(b), which is a prohibition against evidence of "other offenses to prove that a party acted consistent with such prior behavior." 1 LOUIS J. PALMER, JR., ROBIN JEAN DAVIS, FRANKLIN D. CLECKLEY, HANDBOOK ON EVIDENCE FOR WEST VIRGINIA LAWYERS § 404.04[1][a] at 368 (6th ed. 2015). "Traditionally, this area of the law has been called 'misconduct *not charged*' or '*uncharged* conduct.'" *Id.* (emphasis added).

---

[4] In *McGinnis*, we outlined the procedure for determining admissibility of extrinsic evidence under West Virginia Rule of Evidence 404(b). This procedure entails an *in camera* hearing in which a circuit court must be satisfied to the preponderance of the evidence that the defendant committed the act to be introduced and admitting evidence of the act does not run afoul of our evidentiary rules' prohibition on irrelevant or unduly prejudicial evidence. *See* Syl. Pt. 2, *McGinnis*, 193 W.Va. 147, 455 S.E.2d 516 (1994).

While we have condoned the use of a *McGinnis* hearing to determine whether to sever charges under West Virginia Rule of Criminal Procedure 14(a), we have never extended our holding in *McGinnis* to require it. *See Rash*, 226 W.Va. at 42-43, 697 S.E.2d at 77-78; *Harris*, 226 W.Va. at 478, 702 S.E.2d at 610. Rather, circuit courts are merely required to "consider in some depth a motion to grant a severance." *State v. Ludwick*, 197 W.Va. 70, 73, 475 S.E.2d 70, 73 (1996).

In considering Petitioner's motion, the circuit court conducted a hearing in which it entertained arguments from both the State and Petitioner on whether severance was appropriate. The circuit court determined joinder was not prejudicial enough to make severance necessary. Had the circuit court granted Petitioner's motion to sever, testimony from any one victim would have been admissible in each separate trial, thus resulting in four virtually identical trials. Thus, we find no abuse of discretion in the circuit court's denial of Petitioner's motion to sever.

### B. *Amendment of the Indictment*

Petitioner next argues the circuit court erred by allowing the State to amend the indictment as to the years in which his alleged conduct occurred. Previously, the indictment set out different years for each of the victims: 1969 to 1971 pertained to L.S., 1967 pertained to S.S., 1972 to 1974 pertained to L.W., and 1973 to 1975 pertained to R.W. On the morning of the first day of trial, but before the trial began, the State moved to amend the indictment to include the years "1965 to 1975" as to all charges. The State reasoned the amendment clarified to the jury it could convict Petitioner even if his

10

alleged abuse did not occur within the more specific time-frame, e.g., if Petitioner sexually abused S.S. in 1968 instead of 1967.

Petitioner objected to the amendment on the ground that he prepared his defense, in part, on disproving the State's time-line. However, he did not move for a continuance or claim he planned to present an alibi defense. He now generally asserts the State's amendment of the indictment prejudiced his ability to present a defense. Thus, he argues the amendment to the indictment was substantial, and the circuit court's failure to resubmit it to the grand jury was error.

As to amending an indictment, we have held:

> Any substantial amendment, direct or indirect, of an indictment must be resubmitted to the grand jury. An "amendment of form" which does not require resubmission of an indictment to the grand jury occurs when the defendant is not misled in any sense, is not subjected to any added burden of proof, and is not otherwise prejudiced.

Syl. Pt. 3, *State v. Adams*, 193 W.Va. 277, 456 S.E.2d 4 (1995). Likewise, "An indictment may be amended by the circuit court [without resubmission to the grand jury], provided the amendment is not substantial, is sufficiently definite and certain, does not take the defendant by surprise, and any evidence the defendant had before the amendment is equally available after the amendment." Syl. Pt. 2, in part, *Id.*, 193 W.Va. at 281, 456 S.E.2d at 8 (footnote omitted).

In opposing the amendment, Petitioner has the burden of demonstrating it was prejudicial or otherwise substantial. *Id.*, 193 W.Va. at 283, 456 S.E.2d at 10. While the amendment's timing so close to trial might not have been expected, he could have

11

avoided any claimed prejudice by requesting a continuance. *Id.*, 193 W.Va. at 282, 456 S.E.2d at 9. Furthermore, Petitioner never claimed he planned to present an alibi defense before the State amended the indictment. *See State v. McIntosh*, 207 W.Va. 561, 578, 534 S.E.2d 757, 774 (2000) (providing that variance between indictment and proof at trial as to dates in which sexual abuse occurred was not prejudicial because "an alibi defense was not attempted"). In fact, he did not present an alibi defense as to any charge. Finally, as is apparent from the record, the amendment to the indictment did not preclude him from presenting evidence to discredit the State's time-line. Accordingly, Petitioner failed to establish prejudice arising out of the indictment's amendment.

Likewise, the amendment did not change the essence of the offenses charged against Petitioner. As we have stated, when "time is not an essential element of the crime and an alibi defense has not been presented, it has been held that an amendment as to the date of the offense is not material." *State v. Larry A.H.*, 230 W.Va. 709, 713, 742 S.E.2d 125, 129 (2013) (quoting *State v. Riffe*, 191 N.C. App. 86, 661 S.E.2d 899, 905 (2008)). "[T]ime is not an element of the crime of sexual assault, [so] alleged variances concerning when the assaults occurred did not alter the substance of the charges against the defendant." *State v. Miller*, 195 W.Va. 656, 663, 466 S.E.2d 507, 514 (1995). Without question, Petitioner's alleged sexual abuse would have been illegal no matter what year it occurred. Therefore, the circuit court's amendment of the indictment was "of form" and not substantial.

Thus, under the facts of this case, we find the circuit court did not abuse its discretion in allowing the State to amend the indictment against Petitioner.

12

## C. Territorial Jurisdiction as to S.S.

Petitioner's next ground for appeal pertains to the charges related to S.S. S.S. testified she stayed in West Virginia with Petitioner for only a short time before moving to Florida with her mother.

However, Petitioner contends that, according to S.S.'s own testimony, it would have been impossible for the charged conduct to have occurred in West Virginia. At trial, S.S. claimed she was sexually abused when she was approximately five years old. S.S. was born in 1961, so she would have been five in 1966. It is undisputed the family moved from Virginia to West Virginia in 1968 or 1969.

Petitioner asserts that, assuming S.S. was accurate about how old she was, the sexual abuse would have occurred in Virginia. Because "a crime can be prosecuted and punished only in the state and county where the alleged offense was committed[,]" Petitioner argues the circuit court, located in Monongalia County, West Virginia, had no jurisdiction to as to the charges pertaining to S.S. Syl. Pt. 2, *State v. McAllister*, 65 W.Va. 97, 63 S.E.2d 758 (1909).

Despite S.S.'s inaccuracy as to how old she was, evidence supported her contention that the sexual abuse occurred in Monongalia County, West Virginia. At trial, S.S.'s mother confirmed S.S. stayed with Petitioner in West Virginia before moving to Florida. Consistent with this testimony, S.S. was able to describe the exterior and interior of Petitioner's house in Monongalia County, West Virginia. She claims Petitioner sexually abused her during this stay in Monongalia County, West Virginia.

13

When there is conflicting evidence as to the location a crime occurred, we have held:

> The judge and jury share responsibility for the ultimate determination of territorial jurisdiction in a criminal case involving controverted jurisdictional facts. The court must first determine as a matter of law whether the elemental act or consequence at the heart of the disputed evidence would be sufficient to establish jurisdiction if it occurred within the State. If sufficiency is found by the court, the matter is submitted to the jury for determination of whether the evidence demonstrates beyond a reasonable doubt that the act or consequence at issue actually occurred within the borders of the State.

Syl. Pt. 4, *State v. Dennis*, 216 W.Va. 331, 607 S.E.2d 437 (2004). In accordance with our holding in *Dennis*, the circuit court instructed the jury: "In order for the jury to find the Defendant guilty of sodomy as charged in Counts 10 and 11 of the indictment, the State must . . . prove beyond a reasonable doubt that . . . [Petitioner], *in Monongalia County, West Virginia*, . . . unlawfully, intentionally and feloniously engaged in carnal knowledge of [S.S.]" (Emphasis added).

Therefore, the circuit court properly referred the factual question of where the alleged acts as to S.S. occurred to the jury. In doing so, it correctly instructed the jury that, to find Petitioner guilty, the State must prove beyond a reasonable doubt the crimes occurred in Monongalia County, West Virginia. Having been properly instructed, the jury found, beyond a reasonable doubt, that Petitioner sexually abused S.S. in Monongalia County, West Virginia. Thus, we find no reversible error in this ground for appeal.

14

### D. *Sufficiency of the Evidence*

In his final assignment of error, Petitioner argues the evidence against him was insufficient to support his jury conviction. He contends there was no physical evidence he sexually abused L.S., S.S., L.W., and R.W. He also points to several minor inconsistencies in the victims' testimonies that are not related to the allegations of sexual assault. Finally, he asserts the victims' testimonies prove they would "say anything" to convict him. Thus, he argues the circuit court erred in denying his post-trial motion for acquittal for insufficient evidence.

In reviewing a circuit court's denial of a motion for acquittal for insufficient evidence, we have held:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). Furthermore,

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. . . . Finally, a jury

15

verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find a reasonable doubt.

Syl. Pt. 3, in part, *Id*., 194 W.Va. at 669, 461 S.E.2d at 175.

Petitioner failed to satisfy the heavy burden of proving the evidence was insufficient to convict him. Each of the victims recounted the similar way Petitioner abused each of them when they were young girls, including how he was able to get each of them alone, used saliva and Vaseline as lubricant before he abused them, instructed them to use mouthwash afterwards, and threatened them in order to keep them from telling anyone. Petitioner's ex-wives, the mother of L.S. and S.S. and the mother of L.W. and R.W., both admitted to knowing about the sexual abuse but failing to report it to the police. Additional evidence supporting Petitioner's conviction included the testimony of L.S.'s psychotherapist and her best friend, both stating L.S. told them about Petitioner abusing her long before she reported it to the police.

Upon review of the evidence in the light most favorable to the prosecution, and crediting all inferences and credibility assessments the jury might have drawn in the State's favor, we find the evidence was sufficient to support Petitioner's conviction. Thus, the jury's finding of guilt beyond a reasonable doubt cannot be disturbed.

## IV.
## CONCLUSION

Upon review of the record, we find no reversible error by the circuit court. The circuit court acted within its discretion when it denied Petitioner's motion to sever

16

the charges against him and allowed the State to amend the indictment. Furthermore, there was sufficient evidence to support the jury's finding that, beyond a reasonable doubt, Petitioner committed all the alleged acts in West Virginia. Finally, sufficient evidence supported Petitioner's September 19, 2014, jury conviction.

Affirmed.