## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-0560** (Berkeley County CC-02-2019-F-271)

**Jason C.,**
**Defendant Below, Petitioner**

### MEMORANDUM DECISION

Petitioner Jason C., by counsel B. Craig Manford, appeals the Circuit Court of Berkeley County's July 2, 2020, orders (1) sentencing him to an aggregate sentence of 115 to 370 years of incarceration for six counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust; six counts of sexual abuse in the first degree; one count of sexual assault in the first degree; and one count of violation of a protection order and (2) denying his motion for a new trial and judgment of acquittal.[1] Respondent the State of West Virginia, by counsel Andrea Nease Proper, filed a response to which petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

On June 25, 2018, Tiffany C., the mother of M.K., notified Cpl. Frederick H. Edwards of the West Virginia State Police that approximately one year prior, her husband/petitioner disclosed to her that M.K. had "dry humped" petitioner while petitioner was sleeping on the couch. Tiffany C. also told Cpl. Edwards that, over the past few years, she had heard petitioner comment to M.K. that "you need to tell your mother or I'm going to." Tiffany C. also advised that she inquired of her husband how many times the "dry humping" occurred, and he claimed it was only once. Tiffany C. further informed Cpl. Edwards that four or five nights prior to her contacting police, petitioner called M.K. at her grandmother's home and told her that she needed to tell her mother everything; M.K.'s grandmother had communicated the same to Tiffany C. As a result, Cpl.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

Edwards arranged for a forensic interview of M.K., during which she said that she was dry humped by petitioner on multiple occasions but had tried to forget it. M.K. advised that the incidents occurred at night when her mother was not home. She also stated that "humping" is what happens when your clothes are off but "dry humping" occurs when clothes are on. She said that the dry humping always happened on the couch and that the last time it happened was three years prior.

Cpl. Edwards interviewed petitioner twice on the same day. Petitioner advised the officer that the dry humping incidents occurred but were initiated by M.K. and that on some of the occasions he would pretend to be asleep. He told Cpl. Edwards that the incidents occurred in 2014 at the family home. Petitioner also claimed that he had caught M.K. doing the same thing to a sibling, at which time he told her if she ever did that again to do that to petitioner instead. During the second interview, petitioner admitted that M.K. touched his penis under his shorts on one occasion and that he touched her vagina, without penetration, on one occasion. He further disclosed that during one occasion of dry humping, he ejaculated. On June 27, 2018, Cpl. Edwards filed a criminal complaint against petitioner, alleging that in 2014, in Berkeley County, petitioner committed three counts of sexual abuse by a parent, guardian, or custodian and one count of sexual abuse in the first degree against a minor between the ages of eleven and twelve. Petitioner was indicted by a grand jury on February 21, 2019, on six counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust and six counts of sexual abuse in the first degree.

On August 19, 2019, Cpl. Edwards was contacted by Tammy P., mother of Tiffany C. and guardian of thirteen-year-old A.M., regarding an allegation of sexual abuse against A.M. by petitioner. Tammy P. explained that A.M. is blind but can distinguish between light and dark. Tammy P. told Cpl. Edwards that A.M. had recently disclosed to her and other family members that petitioner had touched her inside of her underwear on two occasions; when questioned more thoroughly, A.M. stated that petitioner had penetrated her vagina with his finger. Tammy P. told Cpl. Edwards that the abuse occurred when the kids were playing Dungeons and Dragons and the disclosure occurred the day before Tammy P. went to police. According to Tammy P., after everyone else went to bed, petitioner came over to the couch where A.M. was, laid down, and touched her through her underwear.

A.M.'s forensic interview was conducted on August 26, 2019, at which time she said that petitioner touched her approximately eighteen months prior and that it happened on two occasions. During the interview, A.M. said that after playing Dungeons and Dragons and after the others had gone to bed, she was lying on the couch when petitioner came over and sat on the other side of the couch. A.M. fell asleep and woke up with petitioner's hand on her private parts. She reported that when she pushed his hand away, he kept putting it back; A.M. said that petitioner's hand was on the outside of her shorts but that he kept trying to unbutton them. A.M. said she knew it was petitioner because everyone else had gone to bed and she recognized his voice, asserting that she was very good at determining voices. A.M. pinpointed the time frame to April of 2017 because petitioner's biological daughter was at the house visiting for spring break. A.M. said that it happened again shortly before "stuff went down with [M.K.]" and petitioner. She said that she was again sleeping on the couch when petitioner woke her up by lying down next to her. He tried to remove her leggings, but she kept pulling them back up. This continued until he was able to touch her in a sexually inappropriate manner.

2

On October 14, 2019, the State filed a "Notice of Intent to Seek a Superseding Indictment" and "Motion to Schedule Arraignment Prior to Trial." The superseding indictment was returned against petitioner on October 16, 2019, which included six counts of sexual abuse by a parent, guardian, or custodian against M.K.; six counts of sexual abuse in the first degree against M.K.; one count of sexual assault in the first degree against M.K.; two counts of sexual abuse by a parent, guardian, or custodian against A.M.; three counts of sexual abuse in the first degree against A.M.; and one count of violation of a protective order.

On February 12, 2020, petitioner filed a motion for severance of the counts related to A.M. from those related to M.K., arguing that he would suffer substantial prejudice if separate trials were not granted. He also argued that in a joint trial his defense would be hampered because petitioner desired to testify in his defense to the allegations related to A.M. but did not necessarily want to testify as to those related to M.K. The State filed a motion in limine regarding "rape shield" evidence of M.K.; petitioner sought to introduce purported evidence that M.K. had acted out sexually toward other children in the household. The circuit court granted the State's motion in limine and set forth its findings regarding that motion. The circuit court denied petitioner's motion to sever based on the factual similarities, similar ages of the victims, same location within the house, both were known to and related by marriage to petitioner, and other similarities.

Petitioner's jury trial began on February 26, 2020. Following the presentation of the State's case-in-chief, petitioner moved for a judgment of acquittal, arguing that the State had failed to present evidence of sexual gratification on four of the occasions of dry humping while petitioner was allegedly asleep. In response, the State argued that it had established a prima facie case when viewing the evidence in the light most favorable to the State. The circuit court denied petitioner's motion. After petitioner's counsel presented his defense, petitioner renewed his motion for a directed verdict, which was denied by the circuit court.

At the conclusion of a three-day jury trial, petitioner was found guilty of six counts of sexual abuse by a parent, guardian, custodian, or person in a position of trust; six counts of sexual abuse in the first degree; one count of sexual assault in the first degree; and one count of violations of a protection order—the counts related to M.K.. He was, however, acquitted of two counts of sexual abuse by a parent, guardian, or custodian; two counts of first-degree sexual abuse; and one count of first-degree sexual assault. All of the counts for which he was acquitted related to the allegations as to A.M. Pursuant to petitioner's request, each juror was polled individually, and each juror affirmed that he or she agreed with the verdict.

Prior to sentencing, the circuit court ordered the completion of a presentence report to be prepared by the probation officer. On June 22, 2020, the circuit court held petitioner's sentencing hearing, during which the parties indicated that they had received that report and had no objections to the same. Following the submission of sentencing memoranda from both parties and petitioner's request for an alternative sentence of home confinement or probation, the circuit court sentenced petitioner to the following: ten to twenty years for each count of sexual abuse by a parent, guardian, custodian, or person in a position of trust; five to twenty-five years for each count of sexual abuse in the first degree; and twenty-five to one hundred years for the count of sexual assault in the first degree. He was ordered to pay a fine of $1,000 for the misdemeanor offense of violation of a protective order, in addition to time served. The circuit court ordered that the sentences be served

consecutively for an aggregate sentence of 115 to 370 years of incarceration. In addition, upon his release from the penitentiary, petitioner will be placed on supervised release for a period of fifty years. The circuit court also informed petitioner of his obligation to register as a sex offender for the rest of his life; however, petitioner refused to sign the written requirements, which were signed by his counsel. The resulting sentencing order was entered on July 2, 2020.

Petitioner filed a motion for a new trial and judgment of acquittal on March 16, 2020, which were also denied by order entered on July 2, 2020. The circuit court heard argument and addressed those motions during the June 22, 2020, hearing. In that order, the circuit court noted that the jury's credibility determinations, if reasonable, were binding on the court and determined that the jury found M.K. to be a credible witness. The circuit court specifically found that the jury verdict was not unreasonable; the jury could have based a verdict on M.K.'s testimony; and M.K.'s testimony was largely corroborated by petitioner's testimony and statements to Cpl. Edwards. The circuit court rejected the notion that the jury was swayed by passion or prejudice, as no such evidence of passion or prejudice was presented by petitioner and petitioner was acquitted by the jury of five serious counts involving the other alleged victim, which belied the notion that the jury was somehow prejudiced against petitioner. Petitioner appeals from both of the circuit court's July 2, 2020, orders.

At the outset, we note that "'[t]he Supreme Court of Appeals reviews sentencing orders . . . under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syllabus Point 1, in part, *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997)." Syllabus Point 2, *State v. Georgius*, 225 W. Va. 716, 696 S.E.2d 18 (2010). Syl. Pt. 1, *State v. Varlas*, 243 W. Va. 447, 844 S.E.2d 688 (2020). "Additionally, we have consistently held that '[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review.' Syl. pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982)." *State v. Bleck*, 243 W. Va. 293, 297, 843 S.E.2d 775, 779 (2020).

With regard to the denial of petitioner's motion for a new trial and judgment of acquittal, we have held:

> In reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

> Syllabus Point 3, *State v. Vance*, 207 W.Va. 640, 535 S.E.2d 484 (2000). We have further recognized that "[i]t is well settled that a trial court's rulings on the admissibility of evidence, 'including those affecting constitutional rights, are reviewed under an abuse of discretion standard.'" *State v. Kaufman*, 227 W.Va. 537, 548, 711 S.E.2d 607, 618 (2011) (citing *State v. Marple*, 197 W.Va. 47, 51, 475 S.E.2d 47, 51 (1996)).

*State v. David K.*, 238 W. Va. 33, 38, 792 S.E.2d 44, 49 (2016).

On appeal, petitioner sets forth four assignments of error. However, petitioner wholly ignores the mandate of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure, as he fails to cite to the appendix record even once in the argument section of his brief or reply. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure provides that

> [t]he brief must contain an argument exhibiting clearly the points of *fact* and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error. *The argument must contain appropriate and specific citations to the record on appeal, including citations that pinpoint when and how the issues in the assignments of error were presented to the lower tribunal.* The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(Emphasis added). Additionally, in an Administrative Order entered on December 10, 2012, *Re: Filings That Do Not Comply With the Rules of Appellate Procedure,* Chief Justice Menis E. Ketchum specifically noted that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, the order states that "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Because he cited to the record for the majority of the detailed facts in the statement of the case portion of his brief, we will address the assignments of error, but we remind petitioner's counsel of the need to comply with this Court's Rules of Appellate Procedure.

First, petitioner asserts that the circuit court committed plain and prejudicial error and abused its discretion by sentencing petitioner to not less than 115 nor more than 370 years. He contends this sentence was disproportionate to his crimes and unconstitutional. In a two-paragraph argument, he asserts that the trial court's imposition of consecutive sentences on all counts was excessive and constitutes an abuse of discretion, which shocks the conscience of the court and society. Without citing any additional authority, he argues that such a sentence cannot pass a societal and judicial sense of justice, especially given petitioner's complete lack of criminal history or violence.

Petitioner does not allege that his sentence is contrary to statute or that the circuit court considered an impermissible factor in determining his sentence. Applying the subjective test set forth in *State v. Cooper*, 172 W. Va. 266, 304 S.E.2d 851 (1983), when considering the crimes of which petitioner was convicted, as well as his failure to take responsibility for his actions, his sentence does not shock the conscience. *See State v. Hoyle*, 242 W. Va. 599, 612, 836 S.E.2d 817, 830 (2019).[2] Therefore, the circuit court did not err in imposing petitioner's sentence, which

---

[2] Syllabus Point 5 of *State v. Cooper*, 172 W. Va. 266, 304 S.E.2d 851 (1983), provides:

(Continued . . .)

complies with the statutory guidelines.

In his second assignment of error, petitioner argues that the circuit court erred and abused its discretion in denying petitioner's motion to sever and grant separate trials for the counts concerning each alleged victim. He acknowledges, however, that he had the burden of demonstrating compelling, specific, and substantial prejudice in order to show the need to sever the counts. Petitioner's analysis on this issue is a single paragraph, asserting, without citing to the record, that he argued below his desire to testify in one case but not the other "and gave compelling reasons to the [c]ourt to grant severance." Without citing any law or the record, he argues that even though the jury acquitted him of all charges related to A.M., "it clearly took into consideration his testimony in M.K.'s case and was certainly a factor in his conviction."

As this Court has found, a circuit court's decision to grant or deny a motion for severance under Rule 14(a) of the West Virginia Rules of Criminal Procedure "rests in the sound discretion of the trial court," and petitioner bears the heavy "burden of demonstrating this prejudice was 'compelling,' 'specific,' and 'substantial.'" *State v. Frank S.*, 236 W. Va. 761, 766, 783 S.E.2d 881, 886 (2016). In *Frank S.*, this Court held that "[t]he mere claim that the jury will infer a criminal disposition and thus make it more difficult for the accused to make his case is not enough[.]" *Id.* at 766, 783 S.E.2d at 886.

> Furthermore, "A defendant is not entitled to relief from prejudicial joinder pursuant to Rule 14 of the West Virginia Rules of Criminal Procedure when evidence of each of the crimes charged would be admissible in a separate trial for the other." Syl. Pt. 2, *State v. Milburn,* 204 W.Va. at 209, 511 S.E.2d at 834. Indeed, "if the evidence of each of the crimes on trial would be admissible in a separate trial for the other, prejudice to the accused would in no way be enlarged by the fact of joinder." 1 FRANKLIN D. CLECKLEY, HANDBOOK ON WEST VIRGINIA RULES OF CRIMINAL PROCEDURE, at 708 (2d ed.1993). We abide by this rule because the purpose of joinder is "promotion of judicial economy by avoidance of needless multiple trials." [*State v.*] *Hatfield,* 181 W.Va. [106,] 110, 380 S.E.2d [670,] 674 [1988].

*Frank S.*, 236 W. Va. at 766, 783 S.E.2d at 886.

The instant case is similar to the facts in *State v. Rash*, 226 W. Va. 35, 697 S.E.2d 71 (2010), wherein we found that

> the offenses charged against the Appellant were properly joined because the[y] were "of the same or similar character." The charges herein are similar statutory

---

Punishment may be constitutionally impermissible, although not cruel or unusual in its method, if it is so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity, thereby violating West Virginia Constitution, Article III, Section 5 that prohibits a penalty that is not proportionate to the character and degree of an offense.

offenses, as they all involve inappropriate sexual contact with a minor. Additionally, there are commonalities between the Appellant's offenses against E.C.H. and A.L. that support joinder. The alleged victims were both young prepubescent females who were relatives of the Appellant, [and] the Appellant used his position of trust as a family member to take advantage of both victims . . . Additionally, the two cases could also be "connected together or constitute parts of a common scheme or plan." W. Va. R.Crim.P. 8. The allegations are susceptible to the analysis that defendant's common scheme or plan was to arouse or gratify his sexual desires through the exploitation of young children.

266 W. Va. at 43, 697 S.E.2d at 79. Likewise, we find that the allegations as to both minor females in the present case would have been admissible in separate trials. *See id.* at 37, 697 S.E.2d at 73, Syl. Pt. 3 ("'Collateral acts or crimes may be introduced in cases involving child sexual assault or sexual abuse victims to show the perpetrator had a lustful disposition towards the victim, a lustful disposition toward children generally, or a lustful disposition to specific other children provided such evidence relates to incidents reasonably close in time to the incident(s) giving rise to the indictment . . . .' Syllabus Point 2, in part, *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990)."). Accordingly, these matters were properly joined. Further, petitioner sets forth no law or citation to the record to support his assertion that the allegations and testimony regarding A.M. somehow resulted in his convictions as to M.K., particularly where the jury acquitted him of all charges as to A.M. Thus, we find that the circuit court did not abuse its discretion by denying petitioner's motion to sever the counts in the indictment and hold separate trials.

Petitioner next contends that the circuit court erred and abused its discretion by prohibiting him from presenting evidence of M.K.'s alleged prior misconduct under our rape shield law. He asserts that the circuit court first found that petitioner's proffered evidence was irrelevant, asserting that finding was clearly wrong. According to petitioner, his entire case relied upon this information to explain why he allowed the encounters with M.K. to continue, which was to protect the other children in the household who had been identified as being a part of M.K. acting out. Petitioner argues that this evidence also went to the issue of sexual gratification and would explain that such was not the reason why petitioner allowed the encounters to continue. Petitioner contends it is obvious that the testimony went to intent, which is an element of the offense. Therefore, he asserts that the probative value of the evidence would clearly outweigh any possible prejudicial effect to the State.

We have previously held that "[a] trial court's evidentiary rulings, as well as its application of the Rules of Evidence, are subject to review under an abuse of discretion standard." Syl. Pt. 4, *State v. Rodoussakis*, 204 W. Va. 58, 511 S.E.2d 469 (1998); *see also* Syl. Pt. 2, *State v. Peyatt*, 173 W. Va. 317, 315 S.E.2d 574 (1983) ("'Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk*, [171] W.Va. [639], [643], 301 S.E.2d 596, 599 (1983)[, *overruled on other grounds by State v. Jenkins*, 191 W. Va. 87, 443 S.E.2d 244 (1994)]."). Thus, we review the circuit court's evidentiary decision for an abuse of discretion.

Our rape shield law exists "to protect the victims of sexual assault from humiliating and embarrassing public fishing expeditions into their sexual conduct; to overcome victims' reluctance to report incidents of sexual assault; and to protect victims from psychological or emotional abuse in court as the price of their cooperation in prosecuting sex offenders." *State v. Guthrie*, 205 W. Va. 326, 339, 518 S.E.2d 83, 96 (1999). Under our rape shield law,

> [t]he following evidence shall not be admissible in a civil or criminal proceeding involving alleged sexual misconduct:
> (1) evidence offered to prove that a victim engaged in other sexual behavior;
> (2) evidence offered to prove a victim's sexual predisposition; or
> (3) evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct in any prosecution in which the victim's lack of consent is based solely on the incapacity to consent because such victim was below a critical age, mentally defective, or mentally incapacitated.

W. Va. R. Evid. 412(a).

> The court may admit the following evidence in a criminal case: . . .
>
> (B) except as provided in (a)(3), evidence of specific instances of a victim's sexual behavior with respect to the person accused of the sexual misconduct, if offered by the defendant to prove consent or if offered by the prosecutor;
> (C) evidence of specific instances of the victim's sexual conduct with persons other than the defendant, opinion evidence of the victim's sexual conduct and reputation evidence of the victim's sexual conduct solely for the purpose of impeaching credibility, if the victim first makes his or her previous sexual conduct an issue in the trial by introducing evidence with respect thereto; and
> (D) evidence whose exclusion would violate the defendant's constitutional rights.

W. Va. R. Evid. 412(b), in part.

> "The test used to determine whether a trial court's exclusion of proffered evidence under our rape shield law violated a defendant's due process right to a fair trial is (1) whether that testimony was relevant; (2) whether the probative value of the evidence outweighed its prejudicial effect; and (3) whether the State's compelling interests in excluding the evidence outweighed the defendant's right to present relevant evidence supportive of his or her defense. Under this test, we will reverse a trial court's ruling only if there has been a clear abuse of discretion." Syl. Pt. 6, *State v. Guthrie*, 205 W.Va. 326, 518 S.E.2d 83 (1999).

Syl. Pt. 2, *State v. Timothy C.*, 237 W. Va. 435, 787 S.E.2d 888 (2016).

Petitioner alleged that M.K. was acting out sexually in the home. As the State points out, "[p]etitioner was the only person who observed M.K. allegedly acting out sexually with others. In considering whether the evidence of M.K.'s alleged sexual acting out against others was relevant,

the court properly found that it was not." Although petitioner claims that his "entire case" relied upon his assertion that he allowed the abuse to be perpetrated against him to protect others, his defense that he allegedly allowed himself to be a helpless victim of M.K.'s advances was set forth throughout the case. The State further argues that petitioner was not prevented from asserting that defense; instead, he was disallowed only from attempting to "baselessly malign a child by claiming the child was sexually acting out toward others when he had no proof, other than his own self-serving testimony that this was occurring."

As this Court found in a case where a petitioner sought to introduce evidence of the child victim's sexual past,

> [petitioner] seeks to inform the jury that M.Y. had a sexual relation with a man when she was eleven years old. This evidence strikes at the heart of what Rule 412(a)(1) and Rule 412(a)(3) are designed to prevent from being introduced at a trial. *See United States v. Bordeaux*, 400 F.3d 548, 558 (8th Cir. 2005) (noting that "the purpose of [Rule 412(a) ] is to protect the alleged victims of sexual assault from harassment or embarrassment"); *United States v. Gardner*, No. 16-cr-20135, 2016 WL 5404207, at *2 (E.D. Mich. Sept. 28, 2016) ("MV-1 was under 18 in October 2015, and thus qualifies as an underage victim to whom Rule 412's protections are especially important."); *People v. Arenda*, 416 Mich. 1, 13, 330 N.W.2d 814, 818 (1982) ("These children and others are the ones who are most likely to be adversely affected by unwarranted and unreasonable cross-examination into these areas. They are among the persons whom the [rape shield] statute was designed to protect."). Indeed, in the context of this case "[t]here is nothing more intimate than childhood sexual abuse, and nothing as potentially devastating to a [victim] than to have that abuse publicly exposed." Andrea A. Curcio, *Rule 412 Laid Bare: A Procedural Rule That Cannot Adequately Protect Sexual Harassment Plaintiffs from Embarrassing Exposure*, 67 U. Cin. L. Rev. 125, 155-56 (1998).

*State ex rel. Harvey v. Yoder*, 239 W. Va. 781, 785, 806 S.E.2d 437, 441 (2017). Similarly, petitioner sought to inform the jury that M.K. had engaged in sexual misconduct with others. However, those allegations were unsubstantiated. Further, M.K. was just eleven to twelve years old at the time of the events at issue, a parallel to *State ex rel. Harvey*, which supports the circuit court's decision to prohibit the admission of her alleged sexual history. Thus, we find that the circuit court did not err in doing so.

Finally, petitioner asserts that the circuit court erred by failing to direct a verdict in favor of petitioner at the close of the State's case-in-chief and at the close of all of the evidence or, in the alternative, the jury's verdict was contrary to the evidence presented as to all counts relating to M.K. He contends that even viewing the evidence in the light most favorable to the State, giving the State the benefit of any evidence in doubt, and crediting the State with all inferences and credibility assessments the jury could have drawn from the evidence, reasonable minds could not have reached the same conclusion as to petitioner's guilt related to charges as to M.K. Citing the "undisputed evidence," without specificity, he argues that that evidence showed that petitioner repeatedly encouraged and/or pushed M.K. to disclose what was going on to her mother. He further asserts that M.K.'s testimony was suspect, not amounting to proof beyond a reasonable doubt to

reasonable jurors. According to petitioner, the jury was clearly swayed by their passions and prejudice against him due to the nature of the charges. He argues that M.K.'s testimony was "sufficiently and overwhelmingly rebutted by her prior inconsistent statements and revelations of new allegations, as pointed out in cross-examination and in closing argument. . . ."

Petitioner's argument on this point is essentially that the jury made an incorrect credibility determination. However, as this Court has held, "[a] conviction for any sexual offense may be obtained on the uncorroborated testimony of the victim, unless such testimony is inherently incredible, the credibility is a question for the jury." Syl. Pt. 5, *State v. Beck*, 167 W.Va. 830, 286 S.E.2d 234 (1981). To establish inherent incredibility, one must show "more than contradiction and lack of corroboration." *State v. McPherson*, 179 W.Va. 612, 617, 371 S.E.2d 333, 338 (1988). Rather, establishing inherent incredibility "require[s] a showing of 'complete untrustworthiness[.]'" *Id.* (citation omitted). Further, "when a trial court is asked to grant a motion for acquittal based on insufficient evidence due to inherently incredible testimony, it should do so only when the testimony defies physical laws." *Id.* (citations omitted).

Further, we have held:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. Pt. 1, *State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995). This review takes into account all of the evidence, including circumstantial evidence. "Circumstantial evidence . . . is intrinsically no different from testimonial evidence." *Id.* at 668, 461 S.E.2d at 174 (quoting *Holland v. United States*, 348 U.S. 121, 139-40, 75 S.Ct. 127, 137-38 (1954)). A criminal defendant challenging the sufficiency of the evidence on appeal has a heavy burden; he or she must prove there is *no* evidence from which the jury could find guilt beyond a reasonable doubt. *See Guthrie*, 194 W. Va. at 663, 461 S.E.2d at 169, Syl. Pt. 3.

Here, the jury had the opportunity to observe the witnesses during their testimony and examine all of the evidence presented, both direct and circumstantial. In his argument, petitioner asserts that M.K.'s testimony was "rebutted by her prior inconsistent statements and revelations of new allegations, as pointed out in cross-examination and in closing argument." Therefore, it is apparent that he attempted to impugn petitioner's credibility, but the jury made its credibility determinations, as it was required to do. We will not substitute our judgment for the credibility determinations of the jury. For these reasons, we find that petitioner is not entitled to relief from his convictions or the sentences imposed.

Affirmed.

**ISSUED:** July 19, 2021

10

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton